UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy K. Hernandez | Miriam Baird | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Ryan D. Andrews<br>David C. Parisi<br>Ari J. Sharg | Gregory K. Lee |

**Proceedings:** **(In Chambers): Order GRANTING Plaintiff's unopposed motion for preliminary approval of class action settlement**

Before the Court is Plaintiff Samantha Ellison's ("Plaintiff") non-opposed motion for preliminary approval of a class settlement. The Court heard argument on the motion on September 24, 2012. After considering the moving papers and the arguments made at the hearing, the Court GRANTS Plaintiff's non-opposed motion for preliminary approval of a class action settlement.

I.     Background

On July 19, 2011, Plaintiff filed a Class Action Complaint against Defendant Steven Madden, LTD ("Defendant") alleging violations of the Telecommunications Privacy Act ("TCPA"), 47 U.S.C § 227, which regulates the use of automated telephone equipment. Plaintiff alleges that Defendant violated the TCPA by sending unsolicited text message advertisements to cell phone users, subjecting them to aggravation and requiring them to pay their wireless phone providers for the receipt of the messages. *Compl*. ¶¶ 2-3. Plaintiff seeks to represent a class of all persons in the United States who received one or more unauthorized text message advertisements from Steve Madden. *Compl*. ¶ 21.

On September 15, 2011, Defendant submitted an answer, in which it denied any wrongdoing. *See* Dkt. # 15. Defendant continues to deny Plaintiff's allegations. *Mot*. 1:18. The parties to the action have now reached a Settlement Agreement ("Agreement) and seek

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#41

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

preliminary approval of the Agreement, certification of the proposed class, appointment of Plaintiff as representative of the class, and appointment of the law firms Edelson McGuire LLC and Parisi & Havens LLP as class counsel. *Mot*. 2:22-26.

II.     Preliminary Class Certification for Purposes of Settlement

The parties seek preliminary certification of a class. The class is defined in the Settlement Agreement as follows:

> "[A]ll persons Nationwide who from July, 2010, until the date of Preliminary Approval, were sent any Text Message(s) promoting Steve Madden products and events from short codes 91919 or 623336."

*Settlement Agreement* ¶ 1.33.

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites to class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, under Rule 23(b), a plaintiff must demonstrate (1) that there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, *or* (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b). In this case, Plaintiff seeks class certification pursuant to Rule 12(b)(3). *Mot*. 6:1-5.

   A.     Numerosity

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). In this case, the proposed class includes 203,254 members. *Mot.* 1:10. Courts have regularly certified classes with less than one hundred members. *See In re Itel Sec. Litig.*, 89 F.R.D. 104, 111-12 (N.D. Cal. 1981) ("Where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will usually be met."). Therefore, in this case, the numerosity requirement is satisfied.

   B.     Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), Plaintiff must establish that there are questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has construed Rule 23(a)(2) permissively and noted that the "existence of shared

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#41

CIVIL MINUTES - GENERAL

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In fact, "even a single common question" may satisfy Rule 23(a)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

In this case, the class members all share a common cause of action that is based on the same alleged activity by Defendant, specifically the unsolicited, automated transmission of text message advertisements. *Mot*. 7:12-14. Moreover, the claims involve the following common questions of law and fact, among others:

(1) whether class members receive text message advertisements;

(2) whether Defendant obtained prior consent to sent text message advertisements;

(3) whether the text messages were sent by an automated telephone dialing system; and

(4) whether Defendant's alleged conduct violated the TCPA.

*Mot*. 7:16-20; *Compl*. ¶ 27. This common claim and these common questions demonstrate to the Court the existence of common issues of fact and theories of law as to whether Defendants violated the TCPA. Therefore, the Court finds that Plaintiff has satisfied the commonality requirement.

C.     Typicality

The Rule 23(a)(3) typicality inquiry requires a showing that the named plaintiffs are members of the class they seek to represent and that their claims are "typical" or "reasonably co-extensive with those of absent class members," though they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020. The Supreme Court has explained that the typicality and commonality requirements overlap to a certain degree, but whereas commonality examines the characteristics of the entire proposed class, typicality compares the named plaintiff to the remainder of the class. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiff is a cell phone user whose claim arises from the alleged unsolicited transmission of text message advertisements by Defendant. *Mot*. 8:7-9. Plaintiff alleges that she received unsolicited automated text message advertisements from both source codes referenced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#41

CIVIL MINUTES - GENERAL

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

in the class definition. *Id*. 8:9-11. Thus, Plaintiff alleges harm that is identical to that of other class members. *Id.* 8:7-16. Therefore, the typicality requirement is satisfied.

  D. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "the proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000).

Here, there is no apparent conflict of interest between Plaintiff and the putative class members. She is a member of the class she seeks to represent and seeks remedy for the same alleged violations experienced by the class. *Mot*. 9:4-6. Moreover, Plaintiff has been actively involved in the litigation since the action commenced. *Edelson Decl*. ¶ 7. In addition, the law firm Edelson McGuire has no apparent conflict with the class and has acted as plaintiff's counsel in other consumer class action lawsuits of similar size and scope, including class actions involving text message violations under the TCPA. *Id.* ¶ 4; Ex. A. The law firm Parisi & Havens similarly has experience representing plaintiffs in consumer class actions and has no apparent conflict with the class. *Id.* Ex. B. Therefore, the Court finds that Plaintiff and her counsel satisfy Rule 23(a)'s adequacy requirement.

  E. Rule 23(b)'s Predominance and Superior Method Requirements

Finally, Plaintiff seeks certification under Rule 23(b)(3), which requires that common questions of law or fact predominate and the class action is the superior method of adjudication. The Court notes, however, that the Rule 23(b)(3) is more flexible in some respects when applied to a motion for settlement-only class certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . . for the proposal is that there be no trial.").

In this case, the Court finds that Rule 23(b)(3)'s requirements have been met. First, the material issue in the case, whether Defendant sent unsolicited, automated text message advertisements to class members, is a question that is common to the entire class. Therefore, the shared attributes of the claim would be the main focus of the litigation. The Court also notes that courts in other jurisdictions have found that common issues predominate in other actions for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

unsolicited text message advertisements pursuant to the TCPA.  *See, e.g., C.E. Design v. Beaty Constr., Inc.*, No. 07 C 3340, 2009 WL 192481, at *8 (N.D. Ill. Jan. 26, 2008).

Furthermore, the alternative to class action – individualized cases – would be inefficient, costly, and unwieldy: in order to adjudicate the claims individually, the Court would be forced to hear over 200,000 individualized cases.  Moreover, the prospect of the cost and difficulty of litigation may dissuade class members from seeking redress in the first place.  Therefore, the Court finds that common issues predominate and class action is the superior method of adjudication, and so the requirements of Rule 23(b)(3) are met.

    F.    Conclusion

In sum, Plaintiff has met the four requirements under Rule 23(a) for class certification, in addition to Rule 23(b)(3)'s requirement that the case present common questions of law and fact common to all members of the class that predominate over individual questions, and that class treatment is the superior method of adjudication.  Based on the analysis above, the Court CERTIFIES the proposed class for settlement purposes only and appoints Plaintiff's current counsel – Edelson McGuire LLC and Parisi & Havens LLP – as counsel for the class.

III.    Preliminary Approval of Proposed Settlement

The next step is to determine whether the settlement reached is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

    A.    Legal Standard

The approval of class action settlements is a two-step process under Fed. R. Civ. P. 23(e).  Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval."  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010).  It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing.  *Manual for Complex Litigation* (Fourth) § 13.14 at 173.  After notice to the class, preliminary approval is followed by a review of the fairness of the settlement at the Fairness Hearing, and, if appropriate, a finding that it is "fair, reasonable and adequate."  *Hanlon,* 150 F.3d at 1027.  Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement.  *See, e.g., In re Vitamins Antitrust Litig.,* No. MISC 99-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#41

CIVIL MINUTES - GENERAL

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

197(TFH), MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

     A Court may approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations").

     The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.*

     Furthermore, "[e]specially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d. at 952. The Ninth Circuit has held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *See Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").

     B.    <u>Whether the Proposed Settlement Agreement is Fair, Reasonable, and Adequate Under Federal Rule of Civil Procedure 23</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

### i. Fair and Honest Negotiations

The parties indicate that the Agreement is the result of several rounds of arms' length negotiations, in addition to a full day of formal private mediation with retired Judge Edward A. Infante ("Judge Infante"), which was attended by Plaintiff's counsel, Defendant's counsel, Defendant's in-house counsel, and Defendant's Senior Vice President. *Mot*. 3:12-15.  After the negotiations, Judge Infante drafted a mediator's proposal, which contained the principal terms of the agreement between the parties and to which the parties later agreed. *Id.* 16-17.  The parties indicate that prior to the mediation session, they conducted substantial discovery into the factual circumstances and merits of the case. *Id.* 3:6-9.  For example, Plaintiff obtained from Defendant over 300 gigabytes of electronically stored information and other information from third parties. *Id.*  In general, evidence that a settlement agreement is arrived at after genuine arms' length bargaining after factual discovery supports a conclusion that the settlement is fair.  *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("In general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair.").  Therefore, the fact that the Agreement was reached after arms length negotiations during a mediation session with Judge Infante weighs in favor of finding that the Agreement is fair.

### ii. Terms of the Proposed Settlement

The proposed Agreement provides for a total settlement amount of up to $10 million. *Settlement Agreement* ¶ 1.35.  Pursuant to the Agreement, Defendant will establish a settlement fund of up to $10 million, from which it will make payments to class members. *Id.* ¶ 2.1(a).  Defendant will initially create a fund of $5 million, to be increased by increments of $1 million as needed. *Id.* ¶ 1.35.  Each class member who submits an approved claim will be entitled to $150 from the settlement fund, unless the total claims and other withdrawals from the account exceed $10 million, in which case each claimant's share will be reduced proportionally. *Id*.  In addition to the $150 to which she is entitled as a member of the class, Plaintiff will receive an incentive award of $10,000.  *Id.* ¶ 8.3.  The Agreement also provides for $2.5 million to be paid in attorneys fees. *Id.* ¶ 8.1.  The settlement fund will be used to pay for approved claims, Plaintiff's incentive award, and attorneys' fees, as well as administrative fees related to the settlement and the fees for the private mediation with Judge Infante. *Id.* ¶ 2.1(a).  Any checks that are not cashed within 90 days of issuance will revert to the settlement fund. *Id.* ¶ 2.1(b).  Similarly, any money remaining in the settlement fund after all claims and other expenses have been paid will be returned to Defendant. *Id.* ¶ 2.1(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#41

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

In addition to monetary relief, the Agreement also provides that Defendant will not send text message advertisements or enter into any contracts to send such text messages, unless the message is sent with the prior consent of the recipient, for a period of four years. *Id.* ¶ 2.2. Finally, members of the class may request to have their numbers removed from Defendant's database. *Id.* ¶ 2.3.

   iii. *Scrutiny of the Agreement*

Having reviewed the terms of the Agreement and the papers submitted with the pending motion, the Court finds that the proposed Agreement falls within the "range of possible approval." *See Armstrong*, 616 F.2d at 314. The averment that the parties conducted arms' length negotiations, including a full day mediation session with a retired judge, suggests non-collusive negotiations. Moreover, the Court is satisfied that a monetary award of $150 to each class member, in addition to a ban on future text message advertisements, is fair and appropriate given the nature of the harm.

However, the Court is concerned about several aspects of the Agreement. First, the Court is concerned about the $2.5 million to be awarded to Plaintiff's counsel in attorneys' fees. The fee of $2.5 million represents 25 percent of the total settlement amount. District courts in the Ninth Circuit have discretion in common fund cases to choose either a percentage-of-the-fund or the lodestar method to determine reasonable attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). As a "starting point for analysis," a district court should use a 25 percent "benchmark rate" of the total common fund. *Id.* at 1049. The amount in attorneys' fees in the proposed settlement in this case is within this benchmark range for the total amount. However, based on the structure of the settlement, the attorneys' fees may in fact be much higher than 25 percent of the total amount paid by Defendant. First, Defendants will initially pay $5 million to the fund and will be required to deposit more only if the amount in the fund falls below $1 million. Therefore, Defendants may actually pay out only $5 million. Furthermore, the Agreement provides that any amount left in the fund after all claims and expenses have been paid, including the amount of any un-cashed checks, will be returned to Defendant. As a result, Defendants may receive some of the initial $5 million pay-out back, meaning that its total liability pursuant to the Agreement could be less than $5 million and making the percentage of the total that goes to attorneys' fees much higher than 25 percent.

Moreover, the benchmark rate is only a starting point, which may be inappropriate in some cases, and "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* at 1049. To determine the circumstances, a district court may look to whether exceptional results were achieved for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935 PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

class, the risk to class counsel in taking on the case, whether counsel achieved benefits beyond the cash settlement, the standard contingency fee for similar cases, and the monetary burden to counsel for litigating the case. *See id.* at 1048-50. Here, however, Plaintiff has not provided the Court with sufficient information to evaluate the factors to determine whether the amount is appropriate.

In addition to evaluating the factors noted above, the Court may also apply the lodestar method to supplement its conclusions. *See id.* Under the lodestar method, the court first multiplies the reasonable hours expended by a reasonable hourly rate, and then may enhance that amount by a multiplier, if necessary, to arrive at a reasonable fee. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994). *See also Staton*, 327 F.3d at 965. The Court does not, however, have sufficient information to evaluate the fee award under the lodestar method either. For example, Plaintiff's counsel has not provided any billing statements showing hours worked and the applicable billing rates. Therefore, the Court does not have sufficient information at this time to determine whether the fee award is reasonable.

Next, it would be premature for the Court to conclude that the $10,000 incentive award to Plaintiff is reasonable, given that it is significantly greater than the amount to be awarded to other class members. *See Staton*, 327 F.3d at 975 ("[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."). In *Staton*, for example, the Ninth Circuit found that an incentive award to the named plaintiffs that was sixteen times the amount that unnamed plaintiffs would receive "raise[d] serious concerns as to [the agreement's] fairness, adequacy, and reasonableness." *Id.* at 975. The disparity in the present case is much greater: Plaintiff will receive almost seventy times the amount other class members will receive. Though this amount is not *per se* unreasonable, Plaintiff has not demonstrated efforts that would justify a $10,000 incentive award. According to the Agreement, the award will be "paid in recognition of the Plaintiff's time and effort serving as the Class Representative in this litigation." *Settlement Agreement* ¶ 8.3. Neither the Agreement nor Plaintiff's motion provide any further details on the efforts Plaintiff made in pursuing the litigation, nor has Plaintiff submitted a declaration detailing her efforts. Though Plaintiff's attorney, Jay Edelson, referred in his declaration to Plaintiff's "active participation in the litigation," this vague assertion is insufficient to justify an award to Plaintiff that is so much greater than what other class members will receive.

The Court is prepared at this time to find that the award of $10 million, plus an agreement by Defendant not to send unsolicited text message advertisements for the next four years, is within the range of possible approval, but will need to be provided with more information before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

granting final approval of the settlement.   In addition to the concerns regarding the incentive award and the attorneys' fees, the Court is also concerned that Plaintiff has not addressed in a detailed fashion how the settlement value of $10 million, or $150 per class member, was reached.  Plaintiff and her counsel aver that they are "confident in their ability to succeed should the case proceed to trial," but provide no other details about the merits of the case.  *See Mot.* 14:9-10; *Settlement Agreement* Recital F.  In light of this, the Court GRANTS preliminary approval of the settlement, but orders the production of the following documents:

1. Confidential memoranda from both parties detailing their determination of the merits and value of the case, including evidence relied on in reaching this determination.

2. A memorandum justifying Plaintiff's counsel's award of attorneys' fees and costs, including an itemized billing statement showing hours worked, hourly rates, expenses incurred thus far, and expenses expected to be incurred in the future.

3. A memorandum justifying Plaintiff's incentive award of $10,000, including a detailed description of her efforts in pursuit of the case.

C. <u>Proposed Notice to Class Members, Opt-In/Opt-Out Provisions, and Time Periods for Action</u>

Before the Fairness Hearing, the Court will require adequate notice of the settlement to all class members.  This will allow class members to opt out of the settlement or register objections to the proposed Settlement Agreement.  The Court will take any objections into consideration in rendering a final decision on the merits.

  I. *Proposed Notice to Class Members*

Rule 23(c)(2)(B), which governs notice to class members in class action suits, provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

      (i) the nature of the action;

      (ii) the definition of the class certified;

      (iii) the class claims, issues, or defenses;

      (iv) that a class member may enter an appearance through an attorney if the member so desires;

      (v) that the court will exclude from the class any member who requests exclusion;

      (vi) the time and manner for requesting exclusion; and

      (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

     Here, the proposed notice to class members includes: (1) that there has been a class action settlement making relief available to those who fit the class definition; (2) the definition of the class; (3) that the amount of the settlement will be up to $10 million, with $150 to each class member who submits an approved claim, unless the total costs withdrawn from the account exceed $10 million, in which case the claims will be reduced proportionally; (4) the amount in attorneys fees and the amount Plaintiff will receive as an incentive award; (5) instructions on how to file a claim; (6) information on how class members can exclude themselves from the settlement, if they choose not to be legally bound, and how they can object to the settlement, if they choose to participate; and (7) a phone number to call and a website to visit for more information.  *Settlement Agreement* Ex. B.  The website to which class members will be directed includes additional information, such as the binding nature of the settlement for class members who do not exclude themselves from the case and that class members may use class counsel at no charge or hire their own personal lawyer to appear in the case.  *Settlement Agreement* Ex. D.

     Furthermore, notice will be provided by several means: (1) via First Class U.S. mail, no later than sixty days after the agreement is preliminarily approved; (2) by publication in Cosmopolitan and People magazines, to be published no later than sixty days after the agreement is preliminarily approved; and (3) targeted internet advertising, in an amount of up to $54,000.  *Id.* ¶ 4.2.  The Agreement also provides for a website, which will provide information on the settlement and permit class members to submit claims online.  *Id.*  In order to effectuate notice, the Settlement Administrator ("Administrator") will make reasonable efforts to find the last

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

known mailing and email addresses for class members. *Id.* ¶ 4.2(a).  To facilitate notice, Defendants will provide the Administrator with a list of the cell phone numbers to which Defendant sent text messages, which the Administrator will use to find contact information for the individuals.  *Id.*  In order to receive their claim, class members must submit a form, via mail or internet, no later than forty-five days after the entry of the final judgment approving the Agreement.  *Id.* ¶ 1.4.

    Finally, the Settlement Agreement includes the following proposed schedule:

1. Within five business days after the agreement is executed, Defendant will give the Administrator and Class counsel the list of all known U.S. mailing and email addresses of class members.  *Id.*  ¶ 4.2(a).  The agreement becomes effective when the Court has entered a final approval order and the agreement is signed by all parties.  *Id.* ¶ 9.1.

2. Within sixty days following the preliminary approval of the Agreement, the Administrator will send a notice and claim form by U.S. mail to all class members.  *Id.* ¶ 4.2(c).

3. Within sixty days following the preliminary approval of the Agreement, a notice will be published in Cosmopolitan and People magazines.  *Id.* ¶ 4.2(d).

4. Within ten days following the preliminary approval of the Agreement, the notice will be posted on the website established in connection with this settlement.  *Id.* ¶ 4.2(e).

5. Within forty-five days after the parties complete the notice plan, any class members wishing to be excluded from the Agreement must file a request for exclusion.  *Id.* ¶ 1.19.

6. The final approval hearing will occur ninety days after the website notification is posted.  *Id.* ¶ 5.5.

7. Claims by class members must be postmarked or received no later than forty-five days after the entry of the final judgment.  *Id.* ¶ 1.5.

    The Court concludes that the proposed notice will thus provide the information

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

required by Rule 23(c)(2)(B).  Moreover, it is written in plain, easily-understand language.  Furthermore, the plan for contacting class members, by using their phone numbers to obtain mailing addresses and through internet and print advertising, is reasonably likely to reach class members.

On balance, the settlement appears to be fair and the schedule proposed gives class members enough time to act in their best interest.

IV.     Conclusion

Based on the foregoing, the Court CERTIFIES the class for purposes of settlement only, and APPROVES the proposed Settlement Agreement and Notice Plan.  The Court ORDERS the parties to submit to the Court the following documents at least thirty days before the Fairness Hearing:

1. Confidential memoranda from both parties detailing their determination of the merits and value of the case, including evidence relied on in reaching this determination.

2. A memorandum justifying Plaintiff's counsel's award of attorneys' fees and costs, including an itemized billing statement showing hours worked, hourly rates, expenses incurred thus far, and expenses expected to be incurred in the future.

3. A memorandum justifying Plaintiff's incentive award of $10,000, including a detailed description of her efforts in pursuit of the case.

**IT IS SO ORDERED**

:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#41**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11 - 5935  PSG (AGRx) | Date | September 25, 2012 |
|---|---|---|---|
| Title | Ellison v. Steven Madden, LTD | | |

Initials of Deputy Clerk

cc: