Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
David C. Parisi
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Ryan D. Andrews (*Pro Hac Vice*)
randrews@edelson.com
Ari J. Scharg (*Pro Hac Vice*)
ascharg@edelson.com
John C. Ochoa (*Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA ELLISON, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>STEVEN MADDEN, LTD., a Delaware corporation,<br><br>        Defendant, | CV-11-05935 PSG-AGR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND *RENEWED* MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>**Date: February 25, 2013**<br>***Hearing date authorized by the Court's September 28, 2012 Order (Dkt. 48)****<br>**Time: 1:30 p.m.**<br><br>[Hon. Philip S. Gutierrez] |

# NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Plaintiff will move the Court, pursuant to Federal Rule of Civil Procedure 23(f) and this Court's Orders of September 25, 2012 (Dkt. 45) and September 28, 2012 (Dkt. 48), to grant Plaintiff's Renewed Motion for Award of Attorneys' Fees, Expenses, and Incentive Award on February 25, 2013 at 1:30 p.m., or at such other time as may be set by the Court, at 255 East Temple Street, Los Angeles, California, 90012, Courtroom 880, before the Honorable Philip S. Gutierrez.

Class Counsel respectfully requests that this Court grant its Motion for Award of Attorneys Fees, Expenses, and Incentive Award.  The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: January 2, 2013                    Respectfully Submitted,

SAMANTHA ELLISON, individually and on behalf of a class of similarly situated individuals,

/s/ Ari J. Scharg
One of Plaintiff's Attorneys

Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
David C. Parisi
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Ryan D. Andrews (*Pro Hac Vice*)
randrews@edelson.com
Ari J. Scharg (*Pro Hac Vice*)
ascharg@edelson.com
John C. Ochoa (*Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

I.    Litigation History, Mediation, and Procedural History ........................ 2

II.   This Settlement Provides Strong Monetary and Prospective
      Relief to the Class ................................................................................. 5

III.  The Attorneys' Fees Requested Are Reasonable and
      Should Be Approved. .............................................................................. 6

      A.    The "Percentage of Fund" Method Should Be Applied
            When Determining Attorneys' Fees in this Case. ........................ 7

      B.    Practical and Equitable Rationales Have Shifted Federal
            Courts Away From the Lodestar Method in Determining
            Attorneys' Fees When a Common Fund Is Created. ..................... 8

      C.    An Award of 25% of the Common Fund in this Case
            Is Reasonable. ........................................................................... 10

            1.    The Percentage of Fees Awarded Is Based
                  on the Full Amount of the Common Fund; Not
                  On the Amount Claimed. ...................................................... 11

            2.    The Results Achieved by Class Counsel Were
                  Exceptional. ........................................................................ 13

            3.    There Were Significant Risks Involved in the
                  Litigation. ........................................................................... 14

            4.    Class Counsel Skillfully Prosecuted this Action. ............... 14

            5.    The Contingent Nature of the Fee Supports its
                  Approval. ............................................................................. 15

            6.    The Agreed-Upon Fee Is Consistent with Awards
                  in Similar Cases. ................................................................. 16

      D.    A Lodestar Cross-Check Supports the Reasonableness
            of the Agreed-Upon Fee. ............................................................ 17

IV.   THE COURT SHOULD APPROVE THE AGREED-UPON
      INCENTIVE AWARD. ........................................................................ 21

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................ 9, 11

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) .............................................. 7, 10, 11

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ........................................................................ 12

*Hall v. Cole*, 412 U.S. 1 (1973) ................................................................................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................ 6, 12, 13, 19

*Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740 (2012) ......................................... 13

**United States Circuit Court of Appeals Cases:**

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)............ 8, 11

*Chem. Bank v. City of Seattle*, 19 F.3d 1291 (9th Cir. 2004) ............................. 9, 15

*Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ............ 19

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ........ 20

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990)........................................................ 9

*Gene & Gene v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008)................................... 14

*Grant v. Capital Mgmt. Servs.*, 449 Fed. App'x 598 (9th Cir. 2011) ..................... 14

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................ *passim*

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2009) ................................................................ 1, 7,

*In re Pacific Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................... 10, 16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................ 16

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .................... 8

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ............................. 19

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973) ............................................................................... 8

*Morris v. Lifescan, Inc.*, 54 Fed. App'x 663 (9th Cir. 2003).......................... 10, 16

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) .................................. 19

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................... 7, 10, 11

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................... 21, 22

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................... 13

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) ........................... 20

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................... 7, 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................... 12, 17, 22

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................... 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......... 10, 16, 17, 19, 20

*Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997) .......... 11, 12

*Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) ................................................. 7

**United States District Court Cases:**

*Craft v. County of San Bernadino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................... 10, 17, 20

*Gutierrez v. Barclays Group*,
   No. 3:10-cv-01012-DMS-BGS (S.D. Cal. May 12, 2010) ......................... 20

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ..................................... 22

*In re Activision Sec. Reg.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ................... 8, 9, 10

*In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407 (D. Wy. 1998) ............................. 12

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ........ 15

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005).... 14–15

*In re Nuvelo, Inc. Sec. Litig.*,
   No. 07-cv-4056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ...... 10, 16

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......... 9, 14, 15

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................... 8

*Keith v. Volpe*, 501 F. Supp. 403 (C.D. Cal. 1980) ............................................... 20

*Kramer v. Autobytel, Inc.*,
   No. 10-cv-2722 CW (Dkt. No. 148) (N.D. Cal. Jan. 27, 2012) ............. 16, 22

*Lozano v. Twentieth Century Fox*, No. 09-cv-6344 (N.D. Ill. 2011)................... 22

*Martin v Merrill Lynch*,
　No. 10-CV-04020-CW (Dkt. No. 95) (N.D. Cal. Nov. 22, 2011)............... 16

*Mashburn v. Nat'l Healthcare, Inc.*,
　684 F. Supp. 679 (M.D. Ala. 1988).................................................... 8, 15, 21

*McClintic v. Lithia Motors, Inc.*,
　No. 11-cv-859 RA, 2012 WL 112211 (W.D. Wash. Jan. 12, 2012) ........... 14

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ................ 9

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260 (N.D. Ill. 2012) ............................ 22

*Satterfield v. Simon & Schuster, Inc.*,
　No. 06-cv-02893-CW (Dkt. No. 132) (N.D. Cal. Aug. 8, 2010)........... 16, 22

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.D.C. 1993) ........................... 8

*Thieriot v. Celtic Ins. Co.*,
　No. C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........... 17

*Weinstein v. AIRIT2ME, Inc.*, No. 1:06-cv-00484 (N.D. Ill. 2008)....................... 22

*Williams v. Costco Wholesale Corp.*,
　No. 02-CV-2003 IEG (AJB), 2010 WL 2721452 (S.D. Cal. July 7, 2010) . 22

*Young v. Polo Retail, LLC*,
　No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)........... 17

**<u>Miscellaneous Authorities:</u>**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
　(3d Ed. 1992) ................................................................................ 11–12

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
　(4th ed. 2002)................................................................................... 10

*Court Awarded Attorney Fees, Report of the Third Circuit,*
　108 F.R.D. 237 (1986)......................................................................... 9

*Manual for Complex Litigation* 4th Ed. (2004) ..................................... 9

## INTRODUCTION

Plaintiff submits this Motion and Memorandum in Support of Award of Attorneys' Fees, Expenses, and Incentive Award two weeks in advance of the January 8, 2013 deadline for objecting to the Settlement in accordance with Fed. R. Civ. P. 23(h) and the Ninth Circuit's decision in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2009) (requiring motion for attorneys' fees to be filed prior to the running of the objection deadline).[1]

Receipt of unauthorized text messages is a pervasive and growing problem, with 69% of Americans having received text message spam on their cellular telephones.[2]  The resolution of this case resulted in company-wide changes in the way Defendant Steven Madden Ltd. conducts mobile marketing and provides Class Members with immediate cash awards for their receipt of alleged unauthorized text messages.  The Settlement Agreement[3] entered into between Plaintiff Samantha Ellison ("Plaintiff" or "Ellison") and Defendant Steven Madden Ltd. ("Defendant" or "Madden"), under which the instant request for attorneys' fees is made, creates a $10 million dollar common fund for the benefit of Class Members who received text messages promoting Defendant's products.

In addition to this significant monetary relief, Defendant also agreed to refrain from sending such text message advertisements for four years, unless the cell phone owners have provided clear and conspicuous prior express consent.

---

[1] Upon filing, a copy of this Motion and Memorandum will be posted to the settlement website, www.MaddenTextSettlement.net, where it can easily be accessed by Class Members.

[2] *See* Pew Research Center study "Mobile Phone Problems", Aug. 2, 2012, *available at URL*:
http://pewinternet.org/~/media/Files/Reports/2012/PIP_mobile_phone_problems.pdf.

[3] Capitalized terms refer to the defined terms in the Parties' Settlement Agreement, at Dkt. 41-1.

Further, Defendant will document and retain any such prior express consent it receives for a period of four years.  In sum, the monetary and prospective relief provided for in this Settlement will not only compensate consumers that have already allegedly had their privacy disturbed by unsolicited text messages, but will also fulfill the reasons that the TCPA was enacted and ensure that Defendant obtains express consent before sending any more text messages in the future.

In light of the benefits provided to the Class Members, Class Counsel now moves the Court to approve the agreed-upon fee of $2,500,000 and incentive award of $10,000 to Plaintiff Samantha Ellison.  The attorneys' fee requested in this case constitutes 25% of the Settlement Fund created, exclusive of interest or the value of prospective relief.  This 25% request matches the benchmark set by the Ninth Circuit for class actions that create a common fund, is consistent with similar settlements approved in federal courts across the country, and is eminently reasonable when considered in light of the circumstances of this case, including a "cross-check" with the costs and time expended by Class Counsel.  What makes this fee request all the more reasonable is the fact that Class Counsel was able to achieve this result expeditiously, resulting in quick relief to Class Members and preserving judicial resources.  Thus, Class Counsel's fee request, and incentive award for the Plaintiff, should be approved.

I.     **Litigation History, Mediation, and Procedural History.**

Plaintiff has already given the Court a brief overview of the procedural and litigation history of this case, including the Parties' mediation with the Honorable Edward A. Infante (Ret.), in Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  (Dkt. 41.)  Plaintiff will briefly summarize the aspects of the litigation history pertinent to the instant Motion.

Plaintiff Samantha Ellison filed this action in the Central District of California on July 19, 2011 against Defendant after she received text message calls promoting Defendant Madden's products.  (Dkt. 1.)  She sought damages and

1   injunctive relief on her own behalf and on behalf of a class of consumers who had

2   also received text messages from Madden.  (*Id.*)  Defendant answered the

3   Complaint and pleaded eleven affirmative defenses.  (Dkt. 15.)  Thereafter, the

4   Parties conducted an in-person Rule 26(f) conference in advance of discovery.

5   Although the Parties discussed the possibility of going to mediation early on,

6   Plaintiff indicated that certain discovery would be necessary before any settlement

7   discussion could proceed.  (Declaration of Jay Edelson ["Edelson Decl."] ¶ 8, a

8   true and accurate copy of which is attached as Exhibit A.)

9       As such, the Parties filed a Rule 26(f) statement with the Court on

10   November 3, 2011, (Dkt. 27), and the Plaintiff subsequently began issuing

11   discovery.  This discovery included several rounds of interrogatories and requests

12   for production on Defendant, as well as subpoenas issued on third parties with

13   knowledge of the text messages transmitted by Defendant.  (Edelson Decl. ¶¶ 9-

14   10.)  In response, Madden produced nearly 300 gigabytes of electronically stored

15   information consisting of documents and communications that both Plaintiff's

16   counsel and Plaintiff reviewed.  (*Id.* ¶ 11.)  Plaintiff's counsel also received

17   discovery from third parties identifying the telephone numbers of putative class

18   members that received text messages sent on behalf of Defendant.  (*Id.*)

19       A review of these documents—along with Plaintiff's counsel's and

20   Plaintiff's investigation—revealed the following:

21       In 2010, Madden decided to broaden its mobile marketing strategies in the

22   hopes of gaining customers and increasing sales of its footwear products and

23   accessories.  To effectuate its plan, Defendant retained MoGreet, Inc.

24   ("MoGreet")—a company that purports to specialize in "revolutioniz[ing] mobile

25   marketing" by helping companies "engage with their customers through mobile

26   devices."  The cornerstone of the plan to increase its mobile presence was the

27   creation of the "Steve Madden Mobile Club" in late 2010, which was designed to

28   "send customers exclusive deals directly to their phones."  Since then, Defendant

sent text message advertisements to at least 203,254 consumer cell phones nationwide.  While some of the text messaging campaigns experimented with targeting particular segments of the Mobile Club database, on four occasions Defendant sent promotional text messages to its entire cellphone number database on a single day.

Further, Plaintiff was able to determine that Defendant collected cell phone numbers to use in its Mobile Club text message campaigns from three sources: (1) from its customers at the point-of-sale, (2) from consumers who responded via text message to specific, non-Mobile Club promotions, and (3) through its websites. Plaintiff alleges that Defendant failed to obtain—or even attempt to obtain—prior express consent from these consumers before it placed them into the Mobile Club database and sent *en masse* promotional text messages.

Plaintiff believes this is especially true for the cell phone numbers that were collected at the point of sale (i.e., in-store checkout).  Plaintiff believes discovery shows that Defendant required its sales associates—as a matter of company policy—to ask for and enter the customer's cell phone number into its database during each point of sale transaction.  Importantly however, Plaintiff found no evidence that Defendant ever expressly told its customers that by providing their cell phone number at check-out they were going to be added to the Mobile Club and were subsequently going to be sent text messages promoting Defendant's products.  Defendant disputes the conclusions Plaintiff reached through review of the evidence produced.

The Parties then agreed to a mediation session with Honorable Edward A. Infante (Ret.), which occurred on May 8, 2012, at JAMS' offices in Santa Monica, California.  (Edelson Decl. ¶ 11-12.)  Prior to mediation, the Parties submitted statements to Judge Infante setting forth their respective positions on the litigation, evidence supporting their positions, and views on settlement.  (*Id*. ¶ 12.)  Plaintiff insisted that she would not discuss the issue of attorneys' fees until class relief was

1    agreed upon.  (*Id.*)  The Parties engaged in several rounds of arm's-length

2    negotiations, but were unable to reach an agreement.  (*Id.* ¶ 13.)  At that point,

3    Judge Infante made a mediator's proposal as to the principal terms of an agreement

4    that included class relief and attorneys' fees, which both Parties accepted.  (*Id.*)

5    The Parties subsequently spent several months negotiating the remaining terms of

6    the settlement agreement and, on July 30, 2012, executed the final Settlement

7    Agreement.  (*Id.* ¶ 14.)

8         Since executing the Settlement Agreement, Plaintiff filed a Motion for

9    Preliminary Approval of Class Action Settlement, which this Court granted by its

10   September 25, 2012 Order.  (Dkt. 45.)  In that Order, the Court set several

11   deadlines, including deadlines for Plaintiff to submit memoranda justifying the

12   award of attorneys' fees and costs, as well as Plaintiff's incentive award.  (Dkt. 45

13   at 13.)  With this Motion and Memorandum, Plaintiff responds to the Court's

14   request that she provide it with more information concerning the attorneys' fees

15   and incentive award provisions of the Settlement Agreement, and explains why the

16   requested attorneys' fee and incentive award are fair and reasonable.

17   **II.    The Settlement Provides Strong Monetary and Prospective Relief
          to the Class.**

18        The Settlement reached between the Parties provides exceptional results for

19   the Class Members.  As set forth in the terms of the Settlement Agreement, each

20   Class Member is entitled to a $150 cash payment, or a lesser *pro rata* share, upon

21   the submission of a valid claim form.  (Dkt. 41-1 § 2.1.)  Class Members can

22   submit a claim either via U.S. Mail or online at the settlement website.  Payments

23   to Class Members are made out of the $10,000,000 common fund created in the

24   Parties' Settlement Agreement. (Dkt. 41-1 § 2.1.)

25        To maximize the number of Class Members submitting claims, Plaintiff

26   engaged in discovery that allowed her to identify with reasonable certainty the

27   members of the Class.  (Edelson Decl. ¶ 11.)  Plaintiff insisted on a comprehensive

28

notice plan that includes direct mail, e-mail, targeted Internet advertising, and publication notice in order to reach the most class members.  (Dkt. 41-1 § 4.2.)  Class members have until April 11, 2013 to submit a claim.  (Dkt. 41-1 § 2.1(a).)

In a case such as this, $150 in monetary relief by itself would constitute an excellent result for Class Members.  But this Settlement goes further by providing strong prospective relief that will dramatically alter Defendant's business practices and ensure that consumers do not receive text messages from Madden in the future unless those consumers have provided prior express consent, in writing, to be contacted.  Defendant has agreed to retain proof of such consent for four years from receipt.  In addition to this prospective relief, the Settlement makes it easy for consumers to "opt-out" of receiving additional text message calls from Madden—the claim form allows class members to specifically request that their phone numbers be removed from Defendant's databases.  (Dkt. 41-1 § 2.3.)

### III.   The Attorneys' Fees Requested Are Reasonable and Should Be Approved.

Under Fed. R. Civ. P. 23(h), the Court may award reasonable attorneys' fees based on the agreement of the parties.[4]  The negotiated-upon Settlement Agreement entered into between the Parties here calls for the creation of a Settlement Fund from which class claims, notice costs, attorneys' fees, and incentive award will be paid.  (Dkt. 41-1 § 1.35.)  When, as here, a settlement produces a common fund for the benefit of the entire class, courts have discretion to use either the lodestar method or the percentage-of-recovery method.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury*, 618 F.3d at 992).[5]  Courts, however, typically award attorneys' fees

---

[4] In fact, courts strongly encourage negotiated fee awards in class action settlements.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of the fee.").

[5] Although the Court has the discretion to use the lodestar method in determining fees, the lodestar method is used primarily in class actions involving "fee-shifting" statutes such as federal civil rights cases and antitrust actions.  *In Re Bluetooth*, 654 F.3d 935 at, 941-42.

based on a percentage of the total settlement in common fund settlements.  *Six*

*(6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Regardless of the method chosen, the Ninth Circuit requires that the fee award be

reasonable under the circumstances.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886

F.2d 268, 271 (9th Cir. 1989).

To compensate Class Counsel for the results achieved by this Settlement,

Defendant has agreed to pay from the Settlement Fund attorneys' fees and the

reimbursements of expenses in the amount of $2,500,000, which is reasonable

under both the "percentage-of-fund" analysis and the "lodestar" analysis.  This

amount meets the "benchmark" percentage of attorneys' fees from a common fund

(i.e., 25%) that is preferred by the Ninth Circuit,[6] and is also reasonable when

"cross-checked" using the lodestar analysis. This Court should approve the

requested attorneys' fees.

### A. The "Percentage of Fund" Method Should Be Applied When Determining Attorneys' Fees in this Case.

The "common fund doctrine" is properly applied when "(1) the class of

beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced,

and (3) the fee can be shifted with some exactitude to those benefiting."  *Graulty*,

886 F.2d at 271.  These criteria are "easily met" here because "each member of a

certified class has an undisputed and mathematically ascertainable claim to part of

a lump-sum [settlement] recovered on his behalf."  *Id.* at 271 (citing *Boeing v. Van

Gemert*, 444 U.S. 472, 479 (1980)).  The members of the Settlement Class are

identifiable through records produced in discovery that identify each member of

the Class through their cell phone number.  (Edelson Decl. ¶¶ 11, 15.)  Further, the

Settlement on its face provides for monetary payments of $150 per claim, or a

lesser *pro rata* share, giving class members an "undisputed and mathematically

---

[6] The 25% figure does not take into account the strong injunctive relief obtained for the Class, which the Ninth Circuit will take into account when estimating the value of a settlement.  *Wing v. Asarco, Inc.*, 114 F.3d 986, 989-90 (9th Cir. 1997).

ascertainable claim" to a share of the Settlement Fund that can be precisely shifted because Class Counsel are requesting a fixed percentage of the overall Settlement Fund.  *Graulty*, 886 F.2d at 271.  (Dkt. 41-1 § 8.1.)  Accordingly, the percentage-of-recovery method is appropriate to determine fees and should be applied here. The reasons and rationale for courts to choose the percentage-of-recovery method in common fund cases is briefly explained below.

### B.   Practical and Equitable Rationales Have Shifted Federal Courts Away From the Lodestar Method in Determining Attorneys' Fees When a Common Fund is Created.

During the mid-1970's to mid-1980's, the lodestar method of calculating attorneys' fees in class actions was used by several circuits.  This method relies heavily on the time and money expended in litigating a case in determining the reasonable fee.  *See, e.g., Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973)[7]; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  A shift began to occur in the federal courts, however, when deficiencies with the lodestar method began to surface. *See, e.g., In re Activision Sec. Reg.*, 723 F. Supp. 1373, 1375-78 (N.D. Cal. 1989); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 689-691 (M.D. Ala. 1988); *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 167 (S.D.N.Y. 1989); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.D.C. 1993).

Since then, courts have moved away from using the lodestar method in common fund cases because of the inherent inefficiencies in its application.  For instance, a task force appointed by the Third Circuit Court of Appeals found that the lodestar method results in judicial inefficiency by forcing courts to engage in the analysis and calculation of attorneys' timesheets, while at the same time

---

[7] The Eleventh Circuit, which adopted the "*Lindy*" lodestar method in calculating attorneys' fees, has since rejected that method outright in common fund cases, and instead applies the percentage of fund method in class action settlements involving common funds.  *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

discouraging settlement and incentivizing attorneys to pursue litigation to "run up" legal costs. *See Court Awarded Attorney Fees, Report of the Third Circuit*, 108 F.R.D. 237, 262 (1986). Other Courts—including the Ninth Circuit—echoed these views. In fact, the Ninth Circuit recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases…." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *In re Activision*, 723 F. Supp. at 1374; *Manual for Complex Litigation* 4th Ed. § 14.121 (2004) ("in practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, ... capable of manipulation, ... [and] creates inherent incentive to prolong the litigation").[8]

The current, prevailing view of federal courts across the country, including the Ninth Circuit, is that the percentage-of-recovery method should be used when, as here, a common fund is created for the benefit of a class. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Chem. Bank v. City of Seattle*, 19 F.3d 1291, 1296 (9th Cir. 2004)); *see also In re Activision*, 723 F. Supp. at 1375-78 (collecting authorities). The Supreme Court has approved of the use of the "percentage-of-fund" approach when a common fund is created for the benefit of the class (as opposed to fees awarded pursuant to a fee-shifting statute, where attorney time is used to calculate fees). *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

The underlying rationale for using the percentage-of-fund method to calculate attorneys' fees in a class action settlement is based on the equitable doctrine that those who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigants' expense. *Van Gemert*, 444

---

[8] Courts in other circuits have recognized the shift from lodestar to percentage of fund as well. *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003) ("The parties and the court are well aware of the demise of the pure lodestar method because it encouraged inefficient behavior, turned judges into bean counters and created antagonistic interests between the class and class counsel.").

U.S. at 478; *Graulty*, 886 F.2d at 271.  The percentage-of-fund method has the benefits of eliminating the incentive to unnecessarily "run-up" billable hours, encouraging early settlement of disputes, and preserving judicial resources otherwise used monitoring attorneys' billable hours.  *In re Activision*, 723 F. Supp. at 1376.

As courts shifted to the percentage-of-fund method of awarding attorneys' fees, they also came to a consensus on the appropriate percentage to award from common funds.  The Ninth Circuit has established a "benchmark" of 25% that is routinely awarded in common fund settlements generally, and TCPA settlement in particular.  This benchmark is reasonable and should be applied by this Court.

### C.   An Award of 25% of the Common Fund in this Case Is Reasonable.

Taking into account various types and sizes of common fund settlements, percentage-based attorneys' fees have commonly ranged from 20% to 50%.  Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) § 14.6; *see In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-4056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (noting that the typical fee award in a common fund case in the Ninth Circuit is 30-33% of the fund); *Craft v. County of San Bernadino*, 624 F. Supp. 2d 1113, 1116 (C.D. Cal. 2008).[9]  However, the Ninth Circuit has established a "benchmark" fee of 25% in common fund cases, *In re Bluetooth*, 654 F.3d. at 942 (citing *Six Mexican Workers,* 904 F.2d at 1311), which should be adjusted upward or downward only in "unusual circumstances." *Graulty*, 886 F.2d at 272.  In fact, the award of attorneys' fees in other TCPA class actions is consistently between 25-33% of the total fund available to the class as indicated by the chart attached as Exhibit B.

---

[9]   *See also In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming 33 1/3% fee); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (affirming 28% fee); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) (affirming 25% fee); *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663 (9th Cir. 2003) (affirming 33% fee).

Whether the agreed-upon 25% of the Settlement Fund is reasonable under the terms of the Settlement here is determined with reference to the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.  Applying these factors, it becomes evident that the requested 25% of the applicable Settlement Fund is reasonable and should be approved.  But before analyzing the factors set forth in *Vizcaino*, a brief explanation of the calculation of attorneys' fess in common fund settlements is in order.

> **1.    The Percentage of Fees Awarded Is Based on the Full Amount of the Common Fund; Not On the Amount Claimed.**

The Supreme Court has found that the award of attorneys' fees under the common fund doctrine should be based on a percentage of the total fund size, which corresponds with the total benefit made available to the class.  *Van Gemert*, 444 U.S. 472; *see also Camden I Condo. Ass'n, Inc.* 946 F.2d at 773 (citing *Blum*, 465 U.S. at 900 n.16 (percentage of recovery method is the appropriate method to award attorney's fees in common fund cases)).

The Ninth Circuit has also held that the percentage benchmark should be measured against the *full fund* established by the settlement and not the amount claimed by class members.  *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that it is an abuse of discretion to calculate attorneys' fees using the percentage of fund method against the claimed amount of the fund, rather than the total fund itself) (citing *Van Gemert*, 444 U.S. at 480-81); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14.03, 14-15 (3d ed.1992) ("In *Boeing Co. v. Van Gemert*, the Supreme Court [] rul[ed] that class counsel are entitled to a reasonable fee based on the fund potentially available to be claimed, *regardless of the amount actually claimed*") (emphasis added); *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1412 (D. Wy. 1998).  As such, the Court

1   need not wait until the claims period is over before deciding the issue of attorneys'

2   fees and the incentive award.

3          Measuring the percentage benchmark against the full amount of the

4   settlement fund is all the more appropriate because it would fulfill the agreement of

5   the Parties (and would be consistent with the terms of Judge Infante's mediator's

6   proposal).  The Supreme Court encourages the settlement of attorneys' fees,

7   *Hensley*, 461 U.S. at 437, and the rule laid down by the Court in *Boeing* is all the

8   more applicable in this case, where the Parties have negotiated attorneys' fees and

9   the Settlement Agreement provides for payment of attorneys' fees as a percentage

10  of the total common fund created.  *See Staton v. Boeing Co.*, 327 F.3d 938, 972

11  (9th Cir. 2003) ("parties may negotiate and agree to the value of a common fund . .

12  . and provide that, subsequently, class counsel will apply to the court for an award

13  from the fund, using common fund fee principles."); *Williams*, 129 F.3d at 1027

14  ("The Supreme Court has indicated that the parties to a class action properly may

15  negotiate not only the settlement of the action itself, but also the payment of

16  attorneys fees.") (citing *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 n.30 (1986)).

17         In this case, the Settlement Agreement calls for the establishment of a

18  Settlement Fund of $10,000,000 (*See* Dkt. 41-1, at § 1.35) and for the attorneys'

19  fees to be awarded out of the Settlement Fund at a percentage of 25% (*id.* at ¶ 8.1).

20  The attorneys' fees provision of the Settlement—which was proposed by Judge

21  Infante during mediation—would result in a fee award that is 25% of the total

22  common fund, a result that is proper under both Supreme Court and Ninth Circuit

23  precedent when applying the percentage-of-recovery method.  An analysis of the

24  factors set forth by the Ninth Circuit confirms this result.

25         **2.     The Results Achieved by Class Counsel Were Exceptional.**

26         The benefit obtained for the class is foremost among the factors in

27  determining a proper fee.  *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461

28  U.S. at 434-36.)  As discussed above, Class Counsel have achieved an excellent

1   result for the benefit of the Class in this case.  The Settlement Fund established $10

2   million for the benefit of all members of the Class who can each file claims for

3   $150 (or a lesser *pro rata* share) for receiving allegedly unauthorized text

4   messages from or on behalf of Defendant.  Additionally, as part of the Settlement,

5   Madden agreed to implement significant changes designed to ensure that it only

6   sends text message advertisements to consumers who provided prior express

7   consent, and to retain proof of such consent for four years. [10]  This prospective

8   relief has changed Madden's mobile marketing practices nationwide and stopped

9   the future transmission of unsolicited text messages to consumers.  The settlement

10   Claim Form also allows consumers an easy way to remove their names and

11   telephone numbers from Madden's "Mobile Club" and stop Defendant from

12   sending them future text messages.  These changes not only help achieve the

13   injunctive goals of Plaintiff's class action (alongside the monetary recovery

14   achieved for the Class) but also promote important public policy concerns related

15   to privacy and nuisance stemming from the same type of cost-shifting

16   advertisements that prompted Congress to enact the TCPA in the first place.  *See*

17   *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Mims v.*

18   *Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

19       In short, the Settlement provides a substantial monetary benefit to Class

20   Members as well as strong prospective relief.

21           **3.**      **There Were Significant Risks Involved in the Litigation.**

22       The risk that further litigation might result in a lesser or no benefit to the

23   class is a significant factor in the award of fees.  This is particularly true where,

---

[10] Here, Class Counsel's request for fees does not even account for the value of the prospective relief in the Settlement, which is commonly included as part of determining the common benefit to the class. *Hall v. Cole*, 412 U.S. 1, 5 n. 7 (1973) (noting the common fund doctrine "must logically extend, not only to litigation that confers a monetary benefit on others but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others'").

like here, the case involves complicated legal and factual issues.  *See Vizcaino*, 290
F.3d at 1048.  For instance, the fact that Defendant collected consumers' telephone
numbers from several different sources creates complications surrounding class
determination.[11]  In addition, Defendant asserted eleven affirmative defenses to
Plaintiff's Complaint, and any one of them would have effectively ended this
litigation.  (*See* Dkt. 15.)  These defenses included that Plaintiff consented to
receive the text messages (fourth aff. def., Dkt. 15)[12] and that Madden did not
authorize the TCPA violations (third aff. def., Dkt. 15).  To prosecute the case in
the face of the excellent settlement terms presented here would have been not only
risky, but arguably irresponsible given that Plaintiff still faced class certification,
protracted discovery disputes, and summary judgment motions.  Accordingly, the
significant risk that the Class may have recovered less at a later date, if at all,
supports the present settlement and the agreed-upon fee.

### 4.   Class Counsel Skillfully Prosecuted this Action.

The litigation of a complex, multiparty, nationwide class action "requires
unique skills and abilities."  *OmniVision*, 559 F. Supp. 2d. at 1047.  However, the
"single clearest factor reflecting the quality of class counsels' services to the class
are the results obtained."  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005
WL 1594389, at *12 (C.D. Cal. June 10, 2005).  Additionally, the quality of
opposing counsel is also important in evaluating the quality of the work done by
Class Counsel.  *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337
(C.D. Cal. 1977).  Here, Class Counsel faced formidable opposition by defense

---

[11] This fact, however, in no way precludes class certification.  *See McClintic v. Lithia
Motors, Inc.*, No. 11-cv-859 RA, 2012 WL 112211, at *3 (W.D. Wash. Jan. 12, 2012)
(finding that common questions predominated even though defendant obtained
consumers' telephone numbers from several different sources).  But still, certification of
TCPA class actions is not a foregone conclusion.  *See Gene & Gene v. BioPay LLC*, 541
F.3d 318 (5th Cir. 2008).

[12] Prior express consent is an affirmative defense to a TCPA claim.  *Grant v. Capital
Mgmt. Servs.*, 449 Fed. App'x 598, n.1 (9th Cir. 2011).

counsel from a prominent law firm experienced in complex litigation (Edelson Decl. ¶¶ 6, 17), and nevertheless were able reach a valuable settlement to the benefit of Class Members.  Class Counsel also engaged in discovery that allowed it to ascertain the Class and determine the major legal and factual issues.  (*Id*. ¶¶ 9-11.)  This analysis included the review of almost 300 gigabytes of data produced by Defendant.  (*Id.*)  Importantly, Class Counsel were able to achieve this result expeditiously—so as to quickly provide the Class with compensation for the alleged violations (*i.e.*, $150 cash payments) and put a stop to Defendant's alleged unlawful conduct—without protracted litigation.  This expediency should be a credit to Class Counsel's work.  *See Mashburn*, 684 F. Supp. at 689-90 ("to give the numbers of hours spent prime importance may at times result in rewarding inefficiency or the luxurious practice of law and penalizing those who are efficient and expeditious in performing their legal tasks") (internal citations and quotations omitted.)  The ability of Class Counsel to obtain such a favorable settlement in these circumstances supports the requested fee award.

### 5.    The Contingent Nature of the Fee Supports its Approval.

Contingent fees allow competent counsel to accept cases and provide adequate representation in class actions and are a basis for providing a larger fee than if the matter was billed on a flat or hourly basis.  *OmniVision*, 559, F. Supp. 2d. at 1047 (citing *Chem. Bank*, 19 F.3d at 1299-1300).  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."  *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994).  In this case, Plaintiff retained Class Counsel on a contingent fee basis.  (Edelson Decl. ¶ 25.)  At the time of filing, Class Counsel was aware that it would spend hundreds of hours of attorney time in contested litigation with

no guarantee of success. (*Id.* ¶ 5.) Class Counsel has in fact spent over 1,100 hours representing the Plaintiff and the Class without compensation, which does not take into account the work that must still be performed before the final fairness hearing, communicating with Class Members, and in supervising the administration of the Settlement. (*Id.* ¶¶ 7, 23-24.) Further, Class Counsel have advanced over $50,000 in litigation expenses prosecuting this case with considerable risk of non-return. (*Id.* ¶ 24.) The contingent nature of the fee award justifies the requested fee.

### 6.   The Agreed-Upon Fee Is Consistent with Awards in Similar Cases.

While the Ninth Circuit has established a benchmark fee of 25% of a common fund, awards higher than 25% are regularly approved by courts in this District. *See, e.g., In re Pacific Enters.*, 47 F.3d at 378-79 (affirming 33 1/3% fee); *Vizcaino*, 290 F.3d at 1048-50 (affirming 28% fee); *Morris,* 54 Fed. App'x 663 (affirming 33% fee); *In re Nuvelo,* 2011 WL 2650592, at *2 (noting that the typical fee in this Circuit is 30-33% of the fund); *In re Activison*, 723 F. Supp. at 1377-78 ("nearly all common fund awards range around 30%"). Moreover, courts in the Ninth Circuit have awarded 25% of a common fund based on nearly identical facts. *See Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-02893-CW (Dkt. No. 132) (N.D. Cal. Aug. 8, 2010)*; see also Martin v Merrill Lynch*, No. 10-CV-04020-CW (Dkt. No. 95) (N.D. Cal. Nov. 22, 2011) (granting requested attorneys' fees of 22.9% of overall settlement fund); *Kramer v. Autobytel, Inc.*, No. 10-cv-2722 CW (Dkt. No. 148) (N.D. Cal. Jan. 27, 2012) (awarding 25% of common fund to class counsel).[13]   As such, the fee is justified by awards in similar cases.

### D.   A Lodestar Cross-Check Supports the Reasonableness of the Agreed-Upon Fee.

As confirmed recently by the Ninth Circuit in *In re Bluetooth*, district courts

---

[13] The Chart attached as Exhibit B also contains settlement amounts in similar TCPA cases that are similar to the fee request here.

are encouraged to cross-check the reasonableness of the requested percentage of a

common fund against fees determined by the lodestar method.  654 F.3d at 944.[14]

Utilizing the "lodestar method" as a cross-check requires a calculation of

attorneys' fees by multiplying the number of hours Class Counsel reasonably

expended on the litigation by a reasonable hourly rate that takes into consideration

the region and the experience of the lawyer.  *Staton*, 327 F.3d at 965.  It is

appropriate to calculate attorneys' fees at prevailing rates to compensate for delay

in receipt of payment.  *Vizcaino*, 290 F.3d at 1051.  In addition, performing a

lodestar cross-check does not require mathematical exactitude.  *Thieriot v. Celtic

Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011);

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *6 (N.D.

Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary

tool for setting a fee award, the lodestar cross-check can be performed with a less

exhaustive cataloging and review of counsel's hours").  As discussed below,

whether the lodestar is being used as a cross-check or as the basis in calculating the

fee award, a multiplier is typically applied after the calculation of the base lodestar

amount.  *See Vizcaino*, 290 F.3d at 1051.

The itemized billing records submitted herewith are summarized by the

following chart:

| ATTORNEY (position) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 17 | 52.80 | $630 | $33,264.00 |
| Myles McGuire (Partner) | 12 | 189.5 | $600 | $113,700.00 |
| Ryan D. Andrews (Partner | 8 | 138.9 | $500 | $69,450.00 |
| Michael J. McMorrow (Former Partner) | 13 | 7 | $500 | $3,500.00 |

[14] A lodestar cross-check, however, is not required.  *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).

| | | | | |
|---|---|---|---|---|
| John C. Ochoa (Associate) | 3 | 65 | $325 | $21,125.00 |
| Ari Scharg (Associate) | 5 | 352.90 | $365 | $128,808.50 |
| Eve-Lynn Rapp (Associate) | 4 | 48.10 | $345 | $16,594.50 |
| David Dale (associate) | 1 | 41.1 | $250 | $10,275.00 |
| Jordan Savage (Temporary Attorney) | 1 | 87 | $215 | $18,705.00 |
| Daniel Spector (Temporary Attorney) | 1 | 74.2 | $215 | $15,953.00 |
| Law Clerks – Booth & Yamin | n/a | 58.7 | $215 | $12,620.50 |
| David C. Parisi – (Partner – Parisi & Havens LLP | 24 | 27.6 | $510 | $14,076.00 |
| Suzanne Havens-Beckman (Partner – Parisi & Havens LLP) | 16 | 9.6 | $490 | $4,704.00 |
| Azita Moradmand (Associate – Parisi & Havens LLP) | 4 | 42.5 | $250 | $10,625.00 |
| Non-Attorney Staff – Edelson McGuire | n/a | 256.8 | $215 | $55,212.00 |
| Estimated Time Remaining | n/a | ≈ 300 | ≈ $400 | $120,000.00 |
| **Total** | | | | **$648,612.50** |

(Edelson Decl. ¶¶20, 22-24.)

Class Counsel's base lodestar of $648,612.50 represents the total work Edelson McGuire and Parisi & Havens LLP, have undertaken (and will undertake) since the inception of this case, including research, litigating, negotiating, and ultimately settling this matter to obtain strong relief for the Class.  The attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the California and Chicago legal markets, and which have been approved by state and federal courts in similar settlements.  (Edelson Decl. ¶ 18.)  Therefore, Class Counsel's base lodestar is $648,612.50.

The lodestar calculation, however, is not limited to this initial mathematical calculation and may be enhanced according to the factors constructed in *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975).[15]  Although many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate," *Hensley,* 461 U.S. at 434,[16] the most important of these factors remains the benefit obtained for the class, *In re Bluetooth*, 654 F.3d at 942 (the reasonableness of fees "is determined primarily by reference to the level of success achieved by the plaintiff").  When deciding upon a multiplier, the Court "need not 'recite' the twelve *Kerr* factors; it is only required to consider those factors not already subsumed in the lodestar figure." *Morales*, 96 F.3d at 364.

The use of a lodestar multiplier accounts for the possibility that the attorney will not receive payment if the suit does not succeed.  A historical review of class action settlements shows that the Ninth Circuit has approved of multipliers in the range of 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n.6 and Appendix; *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d Ed. 1992) (recognizing that multipliers of one to four are frequently awarded).  In fact, it has been found an abuse of discretion to fail to apply a multiplier in certain

[15]  The court in *Kerr* identified twelve relevant factors to take into consideration: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.

[16]  Among the subsumed factors taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation (4) the results obtained; and (5) the contingent nature of the fee agreement.  *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996).  *See also Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) ("the Supreme Court recently deemed irrelevant to the fee calculation a final *Johnson-Kerr* factor, the fixed or contingent nature of the fee . . . The *Dague* opinion can also be read as casting doubt on the relevance of a case's 'desirability' to the fee calculation").

matters.  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky").

Here, the lodestar cross-check supports awarding attorneys' fees of 25% of the $10 million Settlement Fund.  Multiplying the total lodestar of $648,612.50 by approximately 3.8 equals $2,500,000, which, in addition to Class Counsel's expenses discussed below of $51,018.24, equals just over the requested fee of $2,500,000.  A 3.8 multiplier falls within the normal range applied in similar cases.  *See Vizcaino*, 290 F.3d at 1051; *Craft*, 624 F. Supp. 2d at 1125 (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multiplier in this range or higher"); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Gutierrez v. Barclays Group*, No. 3:10-cv-01012-DMS-BGS (S.D. Cal. May 12, 2010) (applying a multiplier of 4.55 to class counsel's lodestar in the course of a lodestar "cross-check" in a common-fund TCPA action.)

It is apparent that, for the purposes of a lodestar cross-check, a multiplier of 3.8 to the base lodestar is warranted in this case.  Class Counsel's willingness to undertake this litigation was risky, and despite such risk, an exceptional result was achieved for the Class.  The fact that this case reached an early settlement is not a basis for denying a risk multiplier.  *Skelton v. General Motors Corp.*, 860 F.2d 250, 257-58 (7th Cir. 1988).  In fact, this should be seen as a credit to Class Counsel.  As one Court observed:

> Where success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour. A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more.

*Mashburn*, 684 F. Supp. at 689.  (internal citations and quotations omitted.)

In addition, Class Counsel was precluded from pursuing and accepting other billable matters and engagements by the prosecution of this action.  (Edelson Decl. ¶ 7.)  Defendant also strongly contested Plaintiff's claims.  Additionally, as the customary fee in similar Ninth Circuit cases is 25% of the common fund, a reasonable multiplier of 3.8 is appropriate and in line with applicable precedent. Overall, the results achieved by this Settlement were substantial, allowing each class member to claim up to a $150 cash payment from the available $10 million fund and additionally benefit from strong prospective relief.  Accordingly, Class Counsel's base lodestar of $648,612.50 warrants a multiplier of 3.8, which is commonly awarded and reasonable given the result obtained.

In addition to this amount, or such other amount awarded by the Court, Class Counsel have expended $51,018.24 in reimbursable expenses, such as filing fees, appearance fees, mediation fees, travel, lodging, copying, and case administration, with more expenses yet to come.  (Edelson Decl. ¶¶ 20, 24.)  Therefore, Class Counsel requests the Court to approve as reasonable the agreed-upon fees and expenses of $2,500,000.

## IV.   THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD.

The Settlement provides that, subject to Court approval, the Class Representative Samantha Ellison will receive an award of $10,000 for her efforts on behalf of the Settlement Class.  (Settlement, § 8.3.)  Incentive awards are typical in class actions.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  They are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (quoting *Rodriguez*, 563 F.3d

at 958–59).  The Court has discretion to approve any incentive award and should

consider relevant factors, including:  (1) the actions the plaintiff has taken to

protect the interests of the class; (2) the degree to which the class benefited from

those actions; (3) the amount of time and effort the plaintiff expended in pursuing

the litigation; and (4) reasonable fears of workplace retaliation.  *Williams v. Costco*

*Wholesale Corp.*, No. 02-CV-2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal.

July 7, 2010) (citing *Staton,* 327 F.3d at 960.)

Here, the proposed incentive award for Ms. Ellison is entirely reasonable in

that her involvement in this litigation was critical to the ultimate success of this

case.  (*See* Edelson Decl. ¶26.)   Further, the proposed incentive award is at or

below awards approved in similar class action settlements.  *See Weinstein v.*

*AIRIT2ME, Inc.*, No. 1:06-cv-00484 (N.D. Ill. 2008) (incentive awards of $10,000

and $5,000 to two plaintiffs); *Satterfield*, No. 06-cv-2893 (incentive awards of

$20,000, $5,000, and $5,000 to three plaintiffs); *Lozano v. Twentieth Century Fox*,

No. 09-cv-6344 (N.D. Ill. 2011) (incentive award of $15,000); *Kramer*, No. 10-cv-

2722 (incentive award of $10,000); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260

(N.D. Ill. 2012) (incentive award of $30,000 split amongst five plaintiffs).

Throughout this litigation there was no pre-agreement or discussion concerning an

award or the potential for an award in exchange for the Class Representative's

involvement.  (Edelson Decl. ¶ 25.)

Nonetheless, Ms. Ellison contributed her own time and effort in pursuing

both her individual claim, as well as the class claims, exhibiting a willingness to

participate and undertake the responsibilities and risks attendant with bringing a

representative action.  (*Id.* ¶ 26; *see also* the Declaration of Samantha S. Ellison,

which is attached hereto as Exhibit C, ¶¶ 2-15.) Early on, Ms. Ellison even

relinquished control of her personal cell phone (which received the text messages

at issue) so that Class Counsel could create a mirror image of its hard drive and

otherwise preserve relevant evidence.  Because Ms. Ellison was not eligible for an

1 | "upgrade" through her wireless carrier at that time, she was required to purchase a
2 | new phone, and personally absorb the $599.99 cost.  (Ellison Decl. ¶ 9.)

3 |       Further, as the class representative, Ms. Ellison consulted with Class
4 | Counsel on several occasions in person and over the phone; reviewed documents
5 | produced by Defendant during discovery to help determine how it obtained her cell
6 | phone number (and to help determine the various ways in which it obtained other
7 | Class Members' cell phone numbers); provided Class Counsel with insight on her
8 | understanding of Steve Madden's business (and the industry in general); assisted
9 | Class Counsel with the formulation of written discovery requests; made herself
10 | telephonically available during the entire day of the mediation; consulted with
11 | Class Counsel telephonically during the mediation; and reviewed the pleadings,
12 | court filings, and the Settlement Agreement.  (Ellison Decl. ¶ 2-15.)  Therefore,
13 | Class Counsel requests that the Court approve the agreed-upon incentive award of
14 | $10,000 for Ms. Ellison.

**CONCLUSION**

16 |       For the foregoing reasons, Plaintiff respectfully requests that the Court find
17 | that the agreed-upon attorneys' fees, expenses and incentive award are reasonable,
18 | enter the proposed order separately submitted herewith granting the requested
19 | attorneys' fees and incentive award, and award such further relief the Court deems
20 | reasonable and just.

Dated: January 2, 2013

Respectfully Submitted,

SAMANTHA ELLISON, individually and on behalf of a class of similarly situated individuals,

/s/ Ari J. Scharg
One of Plaintiff's Attorneys

Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
David C. Parisi
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Ryan D. Andrews (*Pro Hac Vice*)
randrews@edelson.com
Ari J. Scharg (*Pro Hac Vice*)
ascharg@edelson.com
John C. Ochoa (*Pro Hac Vice*)
jochoa@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I caused to be served the above and foregoing *Plaintiff's Notice of Motion and Renewed Motion for Award of Attorneys' Fees, Expenses, and Incentive Award* to all counsel of record via email and the court's CM/ECF system on this, the 2nd day of January, 2013.


/s/ Ari J. Scharg
_____