# Exhibit A

Steve A. Miller (CA Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
10 Strecker Rd., Suite 1150
Ellisville, MO 63011
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

J. Scott Kessinger (48221MO)
3-2600 Kaumualii Highway
Suite 1300, #325
Lihue, HI 96746
Phone: 808.635.2924
Fax: 314.754.8370
Email: jscottkessinger@gmail.com

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GROUPON MARKETING AND SALES PRACTICES LITIGATION ) ) ) ) ) ) | CASE NO. 11-md-2238-DMS-RBB<br><br>Judge: Hon. Dana M. Sabraw<br>Courtroom: 10 |

**OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES BY CLASS MEMBERS MAUREEN CONNORS, AILEEN CONNORS, CHRIS SCHULTE, ANDREA MILLER, and JEN MAXFIELD**

1

COMES NOW, **Maureen Connors**, maureenconnors@sbcglobal.net, proof of purchase of Groupon attached (Exhibit 1, 1-1, and 1-2), **Aileen Connors**, Aileenc123@yahoo.com, proof of purchase of Groupon attached (Exhibit 2, 2-1 and 2-2), **Chris Schulte**, crsflyguy@yahoo.com, proof of purchase of Groupon attached (Exhibit 3 and 3-1), **Andrea Miller**, azmillers3@cox.net, proof of purchase of Groupon attached (Exhibit 4, and 4-1) and **Jennifer Maxfield,** Jennifer.maxfield@gmail.com, proof of purchase of Groupon attached (Exhibit 5) by and through their attorneys, and hereby file their Objections to Settlement and Award of Attorneys' Fees, who intend to appear at the fairness hearing through their counsel of record, objecting to this settlement and application for attorneys' fees by Settlement Counsel for the following reasons[1]:

### I. The percentage of the common fund requested as Attorneys' Fees is excessive in contrast to the actual work performed, relief obtained, benefit provided to the Class and the actual claims paid, resulting in a windfall to Settlement Counsel that is not supported by Law.

Class Counsel devotes pages of text to convince this Court and their class members that merely filing a Complaint on January 21, 2011 and entering into settlement negotiations in May of 2011 justifies 25% of the common fund, calculated by Settlement Counsel to be a fee award of 2.125 Million Dollars (Jensen Declaration, par. 4-8; 10; 35, Doc. 48-2, p. 4-8). Class Counsel seeks this amount despite having completed little formal discovery, opting instead for discovery on the issue of whether the matter should be submitted to arbitration without any litigation on the merits.

The Pocket Guide warns the judiciary to beware of settlements involving attorneys who are not directly involved in litigating class claims ("Sometimes, the settlement will be with an

---

[1] The addresses and telephone numbers of each objector are on file with their counsel and are available through their counsel.

2

attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, an especially suspicious circumstance") *Managing Class Action Litigation: A Pocket Guide for Judges, p. 21, 2010 3rd ed. (downloadable from the internet at http://www.uscourts.gov)(emphasis mine).* Here, the class counsel seeking the fee award engaged in little, if any, actual litigation of the merits of the action, admitting that approximately thirteen (13) other suits were filed by other firms across the United States in which they were not participants (Jensen Declaration, par. 16, Doc 48-2, page 7). Class Counsel admits that what it primarily engaged in during the course of these proceedings, was settlement discussions and consolidation of all such actions into "one MDL proceeding." (Jensen Declaration, par. 16; 34-37; Doc 48-2, page 7; 8-9).

The actual value of the settlement to class members is literally zero dollars. A close read of the settlement and FAQs reveals that vouchers are issued instead of dollars, extending the date for redemption of the groupons.

The Pocket Guide warns the court that this is a "hot button indicator" that the settlement is unfair when their exists "An imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorneys fees is a prime indicator of collusion by settling attorneys." *Pocket Guide, p. 20 at 5. Collusion: "Reverse Auctions" and the like." 2010 ed.*

The Pocket Guide warns the judiciary to be vigilant to Class Counsel that seeks fees for what is nothing more than settlement of the case at hand, evidencing collusion or a "Reverse Auction" among the parties:

> A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in negotiating the settlement. Generally, the overpayment of the attorneys originates in an underpayment of what the class should receive based on an objective assessment of the merits of the class claims. *(Pocket Guide, p. 21, 2010 ed).*

3

Settlement Counsel has already conceded that the majority of the "work" performed occurred during settlement, or while negotiating settlement. Not surprisingly, Groupon has agreed to not oppose such a fee award of 2.125 Million Dollars (Stlmt Agreement, par. 40, p. 10-25). This is a "clear sailing" arrangement that "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Lobatz v. U.S. Cellular of Cal., Inc.* 222 F.3d 1142, 1148 (9th Cir. 2000).

Here, the class is receiving nothing more than vouchers- no cash. Yet class counsel gets a fee of 2.125 Million Dollars. This is prohibited.

It is proper for courts to review the actual claims made and the amount paid before calculating an attorney's fee award. *Schwartz . Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001); accord, *Sylvester v. CIGNA Corp.*, 369 F.Supp. 2d 34, 50-53 (D. Me. 2005).

Under the circumstances described above, Settlement Counsel should not be compensated for work they performed that is related only to settlement of the case. As such Settlement Counsel is entitled to a nominal fee, in line with the nominal work performed on behalf of the class, that directly relates to the economic relief provided to the class.

**II. The proposed relief provided to the class, Coupons, requires strict judicial scrutiny under the Class Action Pocket Guide, and this Court should review the claims data for redemption of the coupons before establishing an Attorney's fee.**

Here, the proposed relief is the following, according to the Settlement Agreement entered into by the parties, providing class members with a settlement voucher, according to the website FAQs on grouponvouchersettlement.com. Class members are allowed to redeem their coupon only for a period of 130 days for:

goods and/or services in the amount of the customer purchase price of the groupon

4

voucher that is the basis of the class members claim on the settlement fund, at the merchant partner identified on the groupon voucher.

(Stlmt agreement, par. 58, Exh A, p. 13). No monetary relief is offered to class members.

However, according to the Pocket Guide, the issuance of coupons is another "hot button indicator" requiring this Court to closely analyze the fee request of counsel in respect to the value of the settlement to the class, as to whether the settlement is fair to the class. The Pocket Guide warns:

1. Coupons

CAFA calls for judicial scrutiny of coupon settlements and restricts
the use of unredeemed coupons in calculating fees for class
counsel. See 28 U.S.C. § 1712 (2008). It is important to discern
whether attorney fees are being calculated using the face value of
the coupons instead of the value of coupons actually redeemed.
Determine whether the proposed coupons

• are transferable;
• have a secondary market in which they can be discounted
and converted to cash;
• compare favorably with bargains generally available to a frugal
shopper; and
• are likely to be redeemed by class members.
Coupon settlements were rare even before the passage of CAFA.

Occasionally, you may find that transferable coupons have some
value to a class of repeat users of a product or service, as they did
in In re Mexico Money Transfer Litigation, 267 F.3d 743, 748 (7th
Cir. 2001). Determining the precise value to the class of the rare
beneficial coupon settlement, though, calls for hard data on class
members' redemption of the coupons.

(Pocket Guide (3d ed., p. 17-18). The vouchers are not necessarily transferrable, if "associated with a specific, named individual, promise a good or service customized for, or addressed to a specific individual . . ." (Stlmt Agreement, Doc. 40-3, par. d, p. 18). This Court should establish the exact number of coupons that are transferrable. This Court should exercise its "judicial

scrutiny" and require Class Counsel to present "hard data" on the class members redemption of coupons, before calculating their attorney's fees. Given that the redemption period is only for 130 days, it is unlikely that many of these coupons will be redeemed across the United States (Stlmt Agreement, Doc. 40-3, par. 58, p. 13). Postponing the hearing of class counsel's fee request until it is determined just how many people redeem these coupons will provide the court with the data it needs to make an informed decision about the amount of fees to award to class counsel, should the vouchers somehow establish a cash value that can be assigned by this Court.

As discussed previously, a voucher doesn't get you any money. So this data also is suspect, and should be rigorously reviewed by the Court.

Instead, class members have to file "Settlement Fund Proofs of Claim for Settlement Vouchers" which "must be either electronically submitted to the Claims Administrator by or postmarked by, no later than 60 (sixty) days after the date the Settlement Fund Claims Notice is disseminated." (Stlmt Agreement, Doc. 40-3, par. e, p. 21). But "if at the time of submission of the Settlement Fund Proof of Claim the Merchant is out of business, then the Settlement Class Member shall so state on the Settlement Fund Proof of Claim and Settlement Class Member shall receive a refund of the Customer Purchase Price from the Claims Administrator." (Stlmt Agreement, Doc. 40-3, par. f, p. 22).

How does a class member get cash? According to the parties, only if the merchant is "out of business" or is "unable or unwilling for any reason to redeem a Settlement Voucher, then the Settlement Class member will be entitled to receive" a check for the purchase price plus 20% of the promotional value of the coupon. (Stlmt Agreement, Doc. 40-3, par. 3a, p.22). How many merchants are "out of business"? Class Counsel doesn't tell anyone. How many class members are expected to file claims for "vouchers"? Class Counsel isn't telling, but apparently they

6

anticipate the claims made may exceed the funds available, providing the class members with a pro rata share of the funds, and extinguishing the creation of the "Second Settlement Fund" (Stlmt Agreement, Doc. 40-3, par. b, pa. 23).

Before awarding attorney's fees, this Court should review the claims data to determine what value, if any, the vouchers actually have and then calculate a fee based upon such value.

### III. Because class counsel has not created a common fund, they cannot recover a percentage of such non-existent fund, and the attorney's fees cannot be recovered, making payment of attorney's fees unfair to the class members.

Because there is no economic recovery for the class members, no common fund exists to pay attorney's fees. As discussed above, the class members do not receive any money, but instead nothing more than the renewal of a coupon that can be redeemed at a particular merchant. Where the plaintiff has achieved "only limited success", counting all hours expended on the litigation- even those reasonably spent- may produce an "excessive amount," and the Supreme Court has instructed district courts to instead "award only that amount of fees that is reasonable in relation to the results obtained." *Jones v. GN Netcom, Inc.*, No. 09-56683, p. 11107 (August, 2011), citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983).

Here, the only true result obtained is an extension of the deadline to redeem the groupons- nothing more.

When the attorney's fees is disproportionate to the class reward, which includes no monetary distribution, then the district court has a "special obligation to assure itself that the fees awarded in the agreement are not unreasonably high. *Id. at 11117*. This Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Wininger v. Si Management L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002); accord *Staton v. Boeing Co.*, 327 F.3d

938, 967 (9th Cir., 2003).

But here, class counsel has admitted that this common fund- if it exists at all- is at best a contingency fund for those "vouchers" that merchants fail to redeem either because they are out of business, or refuse to redeem them. The better view would be to award attorney's fees based on a percentage of the actual refunds issued, and not some arbitrary amount agreed to be paid by Defendant in order to extract an attorney's fee. Stated differently, class counsel receives attorney's fees based on a percentage of the amount actually refunded, not some inflated amount guaranteeing a recovery to class counsel of 2.125 Million Dollars.

**IV. The proposed settlement is unfair as it fails to provide injunctive relief for which this Court can assess a value to the class members, and cannot be the basis for an application of attorney's fees.**

After the smoke has cleared away from class counsel's "litigation", the best class counsel could do was extend the rebate, or redemption period for 130 days for the class members. This is nothing more than injunctive relief- forcing the Defendant to permit such coupons to be redeemed for an additional period of time.

Injunctive relief provided to the class is another "hot button indicator" according to the Pocket Guide and requires scrutiny by this Court:

6. Injunctive relief

Question whether injunctive relief will truly benefit class members in the case at hand. In many cases, by putting an end to illegal practices, an injunction will benefit more class members than a small award. It will also avoid clogging the judicial system with the administration of small awards to thousands of class members. But it is important to press the parties to identify such cases clearly and justify the remedy and fees. Ask yourself—and perhaps the parties—the following questions:
• How much is the injunction worth to the class as a practical matter?
• What is the dollar value the relief might yield?
• What is the real cost to the defendant?

8

- Does the injunctive relief do more than restate the obligation that the defendant already has under existing law or under a decree entered by a regulatory body?
- Are there viable damage claims that class counsel has not pursued?
- Might an emphasis on injunctive relief and proposed certification of a Rule 23(b)(2) class amount to a tactical move to avoid more stringent certification requirements and opt-out rights associated with a damages class under Rule 23(b)(3)? Consider whether you need independent expert advice to place a value on the relief offered, as discussed below in part VII.

(Pocket Guide, 3d ed., p. 21-22). The Ninth Circuit Court of Appeals holds that "parties ordinarily may not include an estimated value of undifferentiated injunctive relief in the amount of an actual or putative common fund for purposes of determining an award of attorney's fees. *Staton v. Boeing Co.*, 327 F.3d 938, 946 (9th Cir., 2003).

Even the injunctive relief is conditional, and not permanent, lasting only three (3) years (Stlmt Agreement, Doc. 40-3, par. 1a, p. 17). Even more interesting, despite providing an extension of the expiration date by 130 days, Groupon "shall be permitted to sell Groupon Vouchers with expiration dates applying to their Promotional Values without challenge from the Settlement Class." (Stlmt Agreement, Doc 40-3, par. 1a, p. 17). The parties have manipulated the injunctive relief making it ineffectual, and not lasting for the class members. And Groupon has the ability to amend the injunctive relief (Stlmt Agreement, Doc 40-3, par. e, p. 19). Under the analysis of the Pocket Guide, and *Staton*, the injunctive relief has a zero value, since it does nothing more than reestablish the status quo for the Defendant, merely restating its legal obligations and allows it to completely avoid following the law after 3 years.

According to the Court of Appeals, it is "precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to the common fund. *Id.* at 974. Despite such paucity of injunctive

9

relief, class counsel boldly claims this is a good result for the class members, justifying its fee of 2.125 Million Dollars.

But this Court of Appeals also holds "that only in the unusual circumstance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Id.* When "this is not the case, courts should consider the value of the injunctive relief obtained as a "relevant circumstance" in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." *Id.* Here, class counsels' fee request of 25% of the contingent common fund should be reduced to the value of the injunctive relief sought, somewhere in the reasonable amount of 5% of the fund, since the injunctive relief is not meaningful, and the most that can be said for counsels' efforts is they obtained a 130 day extension to redeem coupons that were previously issued.

Where "obtaining injunctive relief likely accounted for a significant part of the fees expended, courts can use the common fund version of the lodestar method either to set the fee award or as a cross-check to assist in the determination of how the "relevant circumstance" of the injunctive relief should affect a percentage award. *Id.* Here, class counsel has admitted that the primary relief- the key recovery to the class-is the extension of dates for class members to redeem their groupons.

The problem for class counsel is that it is impossible to quantify a value of 2.125 Million Dollars to a speculative act as to whether or not the class members will redeem the coupons, making the settlement value zero.

Apparently, it is business as usual, with Groupon taking advantage of its consumers and

10

class members after the fees are paid to class counsel within five (5) days of this Court approving the settlement and attorney's fees, by placing expiration dates on their Groupons which led to this lawsuit.

Under the terms of the settlement agreement, the dollar value to the class is not only zero, but it allows the Defendant to engage in the unlawful conduct that led to the filing of the lawsuit, and the lack of any injunctive relief for which this Court can confidently assign a dollar value should result in a severe reduction in the fees awarded to class counsel.

**V.     The proposed settlement is unfair as it provides cy pres relief to persons or entities other than the class members that is unnecessary and unwarranted under the Pocket Guide.**

Despite the fact that most people will not have sufficient time to redeem their vouchers, the parties have decided that the money remaining after 2 years will be "donated" to the Electronic Frontier Foundation and "Center for Democracy and Technology":

3. Cy Pres Fund
Two years after the Second Settlement Fund Claims Notice is disseminated, any remaining balance in the Second Settlement Fund will be donated as follows: 50% to the Electronic FrontierFoundation, and 50% to the Center for Democracy and Technology and an amount of $75,000 shall be set aside from the Second Settlement Fund so that the amount of the total donation shall be at least $75,000.

(Stlmt Agreement, Doc. 40-3, par. 3, p. 20).  According to the Pocket Guide, cy pres relief is another "hot button indicator" (Pocket Guide, p. 17; 19).  How it came to be that representing consumers who were defrauded by Groupon ended with a proposed donation to an entity that allegedly is "defending your digital rights" is unclear- but that is the proposed mission of the Electronic Frontier Foundation (www.eff.org/about).   And another organization, the Center for Democracy and Technology, that is "the leading Internet freedom organization working at the critical edge of policy innovation." (www.cdt.org/about).

11

What happened to providing economic relief to the class? What about simply issuing checks to the class members who submitted claim forms? And the only entities guaranteed payment of money are non-profits that have nothing to do with this litigation (Stlmt Agreement, Doc. 40-3, par. 3, p. 20).

It appears that the game here is to benefit groupon, by allowing it to make a donation. Unfortunately, the only entity that appears to be guaranteed a cash recovery in this case is two non-profit corporations who appear to the be pet beneficiaries of class counsel's and Defendant's benevolent generosity at the expense of the class members, who are guaranteed to receive $75,000 to split between them (grouponvouchersettlement.com/commonly asked questions "What are the possible benefits of this Settlement?").

The Pocket Guide permits cy pres recovery only when benefit to the class is so remote, or slight and that the benefits to the cy pres beneficiary would "come as close to the objective of the case" and the interests of the class members":

3. Cy pres relief ("fluid recovery")
The term "cy pres" has migrated from the trust field into the sometimes
less appropriate realm of class action litigation. Literally, cy
pres means "as near as possible" to the original purpose. In the
class action context, recovery for individual class members is
sometimes not possible or practical. In these instances, the class is
so large and the potential recovery per class member so small that
the cost of administering a single claim would exceed the benefit
to any individual. Individual reimbursement for taxi fare overcharges
is a classic example.
     Cy pres relief must come as close as possible to the objective of
the case and the interests of the class members. Question whether
the class members might feasibly obtain a personal benefit. Look
for evidence that proof of individual claims would be burdensome
or that distribution of damages would be costly. If individual recoveries
do not seem feasible, examine the proximity or distance
between the cy pres recipient's interests or activities and the particular
interests and claims of the class members. When cy pres
relief consists of distributing products to charitable organizations
or others, press for information about whether the products in

12

question have retained their face value or might be out-of-date,
duplicative, or of marginal value. In the end, cy pres awards may be
an excellent way to avoid the restrictive claims processes and reversion
clauses discussed in the next section.

(Pocket Guide, 3d ed., p. 19). How does donating funds to not for profits entities concerned with "digital rights" have anything to do with refunds for coupons that were sold under unlawful circumstances or with unlawful conditions? There is no evidence that the class is so large that the potential recovery from each class member is so small that cy pres is needed here. Furthermore, it appears class counsel is expecting an abysmal redemption of the vouchers, and given the 130 day period to redeem, expect full well that plenty of funds will be available to donate on Groupon's behalf.

Since the class members only have 130 days to either redeem their coupon or cash out through the claims process, it appears that this settlement is really only about making a donation to someone's pet non-profit, while lining the pockets of class counsel. The only entities that are guaranteed a cash payout are class counsel for 2.125 Million in fees, and two (2) non-profit entities that receive a windfall of $75,000.

This Court should not approve a settlement that doesn't even bother to pay money to its class members but guarantees payment of funds to non-class members.

**VI.    The Proposed Settlement is unfair as it fails to address the need for the creation of a subclasses for the class members who are allegedly part of the Second Settlement Fund.**

Incredibly, class counsel created a "Second Settlement Fund", consisting of persons who constitute only class members who "wish to request a refund of the Customer Purchase Price that was paid by the Class Member for a Groupon Voucher after December 2, 2011" (Stlmt Agreement, Doc. 40-3, par. c, p. 24). But once again, the cy pres fund has priority, with funds

13

only paid out on a "first come, first served basis . . . until the Second Settlement Fund is depleted, less $75,000 or until two years after the designation of the Second Settlement Fund, whichever comes first." (Stlmt Agreement, Doc. 40-3, par. d, p. 24). Basically, if any funds are left over, class members who purchased a groupon on or after December 2, 2011 get a chance at a refund if they are quick enough to submit their claim form. But the only entity that is guaranteed a pay out is the pet charities of the parties to the litigation:

(a) Creation of Post-Effective Date Settlement Fund (Second SettlementFund)

Thirty (30) days after all Settlement Fund Claims have been processed by the Claims Administrator as provided above, and all Notice Expenses, Claims Administration Expenses, Incentive Awards and Expenses, and Plaintiffs' Attorneys' Fees and Expenses are paid as provided herein, in the event that there remains more than $75,000 in the Settlement Fund, the Settlement Fund shall be designated the "Second Settlement Fund" and the Claims Administrator shall issue theSecond Settlement Fund Claims Notice to the Settlement Class substantially in the form of Exhibit 8. If there is not more than $75,000 in the Settlement Fund, the balance in the Settlement Fund shall be donated to a charity agreed to by the Parties and the Claims Administrator shall not designate a Second Settlement Fund.

(Stlmt Agreement, Doc. 40-3, par. 4a, p. 23). An entire group of class members get the dregs, or leftovers after everyone else has had a chance at trying to cash out their voucher.

The Supreme Court has made clear that "[s]ettlement is relevant to a class certification." *In re Pet Food Products Liab. Litig. Jim W. Johnson And Dustin Turner*, 629 F.3d 333,341 (3rd Cir., 2010); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Consequently, a district court "may take the proposed settlement into consideration when examining the question of certification." *In re Prudential Ins. Co.*, 148 F.3d 283, 308 (3d Cir. 1998). In *Amchem*, the Supreme Court explained:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that

14

> there be no trial. But other specifications of [Rule 23]—those
> designed to protect absentees by blocking unwarranted or
> overbroad class definitions—demand undiluted, even heightened,
> attention in the settlement context. Such attention is of vital
> importance, for a court asked to certify a settlement class will lack
> the opportunity, present when a case is litigated, to adjust the class,
> informed by the proceedings as they unfold.

*In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 341, *Amchem*, 521 U.S. at 620. Under such circumstances, the Supreme Court mandates that Class Counsel must show that "'the representative parties will fairly and adequately protect the interests of the class.'" *Id. at 342*. The adequacy of the representation is paramount to the Supreme Court on cases where certification has occurred for settlement purposes only. *Id.* The dominant concern then becomes whether a proposed class "has sufficient unity so that absent class members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Id.* How are these persons protected? How has class counsel seen to it that they will in fact recover anything?

When appropriate, a class action may be divided into subclasses that are each treated as a class under [Rule 23]. Fed. R. Civ. P. 23(c)(5). *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 343. Subclasses are appropriate "'[w]here a class is found to include subclasses divergent in interest.'" *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 343; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(c) advisory committee's note); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (explaining that Amchem requires "a class divided between holders of present and future claims" to be "divi[ded] into homogeneous subclasses... with separate representation to eliminate conflicting interests of counsel"). Accordingly, "[a] district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately." *In Re Pet Food Products Liab. Litig.*,

15

*629 F.3d. at 343;* <u>In re Cendant Corp. Sec. Litig.</u>, *404 F.3d 173, 202 (3d Cir. 2005).*

It is patently obvious that the second class that was ignored here, a subclass for the "Second Settlement Fund" has a conflict with the first class members over the funds that they may only be luck to obtain. This conflict cannot be ignored by this Court, when an entire group of people may not receive one dime because the class members in the first settlement fund have depleted the cash completely. More disturbingly, the cy pres is guaranteed to pay out to the pet charities of the parties without passing any cash at all to this abused subclass.

Class Counsel ignored such critical details in failing to create the necessary subclasses described below, in their race to grab 2.125 Million Dollars from Groupon before the Defendant's offer expired.

Class Counsel must show that "'the representative parties will fairly and adequately protect the interests of the class.'" <u>In Re Pet Food Products Liab. Litig.</u>, *629 F.3d. at 341,* <u>Amchem</u>, *521 U.S. at 620*. The adequacy of the representation is paramount to the Supreme Court on cases where certification has occurred for settlement purposes only. <u>Id.</u> Class Counsel cannot show that their representatives "will fairly and adequately protect" the interests of the class members that qualify for the Second Settlement Fund.

Under the analytical framework of <u>Amchem</u> described above, class members have a present claim for relief under the first Settlement Fund, as to be distinguished from the next group, the subclass consisting of Second Settlement Fund claimants, where such class members demonstrate they *may* have a future claim for relief, requiring this Court to establish subclasses for future and present claims, congruent with the Supreme Court's determination of when this Court should establish subclasses. *Supra,* <u>Ortiz v. Fibreboard Corp.</u>, *527 U.S. 815, 856 3e(1999)*. Under the holding of <u>Ortiz</u>, separate counsel must also be appointed for the Second Settlement

Fund class members, and new class representatives selected.

Subclasses are appropriate "'[w]here a class is found to include subclasses divergent in interest.'" *In Re Pet Food Products Liab. Litig., 629 F.3d. at 343; In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 271 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(c) advisory committee's note); see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999).* As described above, the subclass interests diverge away from those who are subject to issuance of refunds from the first settlement fund, since those individuals literally only receive the leftovers of what is not taken up by the class members from the first settlement fund.

WHEREFORE, Objectors hereby pray that this Court deny the Settlement proposal entered into between the parties and enter the following additional relief:

(1) An Order overruling Settlement Counsels' application for attorney's fees of 2.125 Million Dollars;

(2) An Order withholding the calculation of the attorney's fees until this Court makes a determination of the number of claims actually submitted and paid, and the value of each claim;

(3) An Order denying the entry of any relief that provides for a cy pres distribution; and

(4) Any further relief necessary within the premises based upon the objections set forth above and herein.

17

Respectfully submitted by attorneys for Objectors above named:

s/Steve A. Miller
Steve A. Miller (CA Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
10 Strecker Rd., Suite 1150
Ellisville, MO 63011
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

J. Scott Kessinger (48221MO)
3-2600 Kaumualii Highway
Suite 1300, #325
Lihue, HI 96746
Phone: 808.635.2924
Fax: 314.754.8370
Email: jscottkessinger@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 27th day of July, 2012, I have filed and served via ECF Filing using the USDC SD CA ECF Electronic Filing System a true and correct copy of the foregoing and in addition have mailed a copy via U.S.P.S. First Class Postage Prepaid to the following:

John J. Stoia, Jr.
Robbins Gellar Rudman & Dowd LLP,
655 West Broadway, Suite 1900
San Diego, CA 92101
Class Counsel

Shirli F. Weiss
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Attorneys for Defendant

                                                          s/Steve A. Miller