UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| | Wendy Hernandez | Not Reported |
| | Deputy Clerk | Court Reporter / Recorder |
| | Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| | Ari Scharg<br>Jay Edelson | Gregory Lee |

**Proceedings:**  (In Chambers): **Order GRANTING Final Approval of Class Action Settlement**

I.   Background

On July 19, 2011, Plaintiff Samantha Ellison ("Plaintiff" or "Ellison") filed a Class Action Complaint against Defendant Steven Madden, LTD ("Defendant") alleging violations of the Telecommunications Privacy Act ("TCPA"), 47 U.S.C § 227, which regulates the use of automated telephone equipment.  Plaintiff alleges that Defendant violated the TCPA by sending unsolicited text message advertisements to cell phone users, subjecting them to aggravation and requiring them to pay their wireless phone providers for the receipt of the messages.  *Compl.* ¶¶ 2-3.  Plaintiff seeks to represent a class of all persons in the United States who received one or more unauthorized text message advertisements from Steve Madden.  *Compl.* ¶ 21.

On August 1, 2012, Plaintiff filed a Motion for an Order for Preliminary Approval of Class Action Settlement ("Settlement Agreement").  *See* Dkt. # 41.  In this motion, the Parties sought preliminary approval of the Agreement, certification of the proposed class, appointment of Plaintiff as representative of the class, and appointment of the law firms Edelson McGuire LLC and Parisi & Havens LLP as Class Counsel.  *Mot. for Prelim. Approv*. 2:22-26.  The Court preliminarily approved the settlement ("Preliminary Approval"), granted conditional certification of the settlement class, and approved the proposed notice and claim form.  *See* Dkt. # 45. Additionally, the Court ordered submission of the following: (1) a confidential memorandum from both Parties detailing their determination of the merits and the value of the case; (2) a memorandum justifying Class Counsel's award of attorneys' fees and costs, including an itemized billing statement showing hours worked, hourly rates, expenses incurred thus far, and expenses expected to be incurred in the future; and (3) a memorandum justifying Plaintiff's incentive award of $10,000, including a detailed description of her efforts in pursuit of the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

Dkt. # 45. The Court originally set a settlement fairness hearing for February 25, 2013. Dkt. # 48. On December 24, 2012, Plaintiff filed with the Court her Motion for Award of Attorneys' Fees, Expenses, and Incentive Award. Dkt. # 49. Plaintiff filed the present Motion for Final Settlement Approval on January 25, 2013. Dkt. # 56. On February 15, 2013, the Parties filed a joint request to move the hearing date from February 25, 2013 to April 29, 2013, which the Court granted. Dkts. # 62, 63.

II.     Legal Standard

A court may approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Civil Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Id.*

Furthermore, "[e]specially in the context of a case in which the Parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. The Ninth Circuit has held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *See Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between Class Counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated [sic] class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").

III.    Summary of Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

    A.    <u>Material Terms of the Settlement Agreement</u>

The Settlement Agreement provides for a total settlement amount of up to $10 million. *Settlement Agreement* ¶ 1.35. Pursuant to the Settlement Agreement, Defendant will establish a settlement fund of up to $10 million ("Settlement Fund"), from which it will make payments to Class Members. *Id.* ¶ 2.1(a). Class Members are "all persons Nationwide who from July 2010, until the date of Preliminary Approval, were sent any Text Message(s) promoting Steve Madden products and events from short codes 91919 or 623336." *Id.* ¶ 1.33.

Pursuant to the Settlement Agreement, Defendant will initially create a fund of $5 million, to be increased by increments of $1 million as needed. *Id.* ¶ 1.35. Each Class Member who submits an approved claim will be entitled to $150 from the Settlement Fund, unless the total claims and other withdrawals from the account exceed $10 million, in which case each claimant's share will be reduced proportionally. *Id.* In addition to the $150 to which she is entitled as a member of the class, Plaintiff will receive an incentive award of $10,000. *Id.* ¶ 8.3. The Settlement Agreement also provides for $2.5 million to be paid in attorneys' fees. *Id.* ¶ 8.1. The Settlement Fund will be used to pay for approved claims, Plaintiff's incentive award, and attorneys' fees, as well as administrative fees related to the settlement and the fees for the private mediation with retired Magistrate Judge Edward H. Infante ("Judge Infante"). *Id.* ¶ 2.1(a). Any checks that are not cashed within 90 days of issuance will revert to the Settlement Fund. *Id.* ¶ 2.1(b). Similarly, any money remaining in the Settlement Fund after all claims and other expenses have been paid will be returned to Defendant. *Id.* ¶ 2.1(a).

In addition to monetary relief, the Settlement Agreement also provides that Defendant will not send text message advertisements or enter into any contracts to send such text messages, unless the message is sent with the prior written consent of the recipient, for a period of four years. *Id.* ¶ 2.2. Finally, members of the class may request to have their numbers removed from Defendant's database. *Id.* ¶ 2.3.

    B.    <u>Claims Administration</u>

The procedure for giving notice to Class Members, as set forth in the Settlement Agreement and ordered in the Preliminary Approval, has been carried out by professional settlement administrator Epiq Legal Noticing. *See Azari Decl.*, Ex. G, ¶¶ 7-18. Class Members are allowed to submit a claim until the extended claims filing deadline of June 11, 2013. *Id.* at ¶ 20; *Jt. Stip. to Provide Notice to Class & Withdrawal of Obj.* 3:4-15.

Executing this notice plan included the mailing of individual postcard notice to 114,944 Class Members, disseminating Email Notice, publishing Summary Publication Notice in *People*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

and *Cosmopolitan* magazines, posting Internet Banner Notices that generated over 30.5 million "impressions" on over 900 websites, maintaining a settlement website, and establishing a toll-free telephone number so that Class Members could gain more information about the settlement and request a Claim Form. *Azari Decl.* ¶¶ 7-18. The Claims Administrator estimates that the Notice Plan reached approximately 77.5 percent of Class Members. *Id.* ¶ 23. The notice documents that reached Class Members clearly explained to Class Members their rights. *Id.* ¶¶ 23-25. Additional notice of the extended claims deadline was provided to each of the 299,283 email addresses in the possession of the Settlement Administrator. *Jt. Stip. to Provide Notice to Class & Withdrawal of Obj.* 3:11-15.

At oral argument, the parties represented that as of the hearing date, April 29, 2013, approximately 19,000 claims had been filed. The parties also represented that they expected the total number of claims to reach approximately 20,000 by the June 11, 2013 deadline. *See also Azari Decl.* ¶¶ 20; *Jt. Stip. to Provide Notice to Class & Withdrawal of Obj.* 3:4-15. Based on these figures, Class Counsel estimated that approximately $3 million will be paid to Class Members. Seven Class Members have requested exclusion from the settlement, and one objection was filed but has since been withdrawn. *Azari Decl.* ¶¶ 19-20. The Claims Administrator will continue processing claims through June 11, 2013. *Id.* ¶ 20. The cost incurred from implementation of the notice and administration plan is $459,449.83, which will be paid from the Settlement Fund. *Id.* ¶ 21.

Once the claims period is closed, the claims administrator will pay approved claims from the $10 million Settlement Fund in accordance with the Settlement Agreement. *Id.* ¶ 20.

IV.   Evaluation of the Settlement

    A.   Analysis of the Fairness Factors

In evaluating whether a final class action settlement is "fair, reasonable, and adequate," the Court will consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of Class Members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026; *Staton*, 327 F.3d at 960. In addition to exploring these factors comprehensively, the Court will also explore whether the settlement is a product of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The following discussion analyzes the Settlement Agreement in light of these factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

       *i.*     *Strength of Plaintiff's Case*

    The first factor, which focuses on the strength of Plaintiff's case, weighs in favor of settlement. While Plaintiff believes the claims are strong and would likely succeed on the merits, legal uncertainties do threaten Plaintiff's prospects of recovery. *Mot.* 13:1-14:20.

    First, there is potential uncertainty that Defendant could be held liable because it did not transmit the text messages itself, but rather hired a third party to do so. *Id.* at 13:15-22. This argument is based on the fact that the TCPA assigns liability to the party who "makes" the call, but is silent on the issue of vicarious liability. *Conf. Mem. Re: Pl's Det. of the Merits* 5:1-3. Defendant appears to have conceded this point, and Plaintiff argues that the majority of courts have extended liability under the TCPA to any party responsible for the text message. *Id.* at 5:13-6:3; *Conf. Mem. Re: Def.'s Det. of the Merits* 3:23-4:3. However, Plaintiff addressed one California Federal District Court case in which the court declined to extend the TCPA to include liability for an entity on whose behalf text messages were sent without establishing a traditional agency relationship. *Conf. Mem. Re: Pl.'s Det. of the Merits* 4:7- 5:12 (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085-86 (C.D. Cal. 2012)). Plaintiff believes there is enough evidence to demonstrate that Defendant has unfettered control over its text message marketing program and therefore that an agency relationship existed, but there is still some uncertainty that a court would extend liability in this case. *Id.* at 6:4-7:21.

    Second, Defendant initially challenged Plaintiff's lack of consent to receiving text messages, arguing that by providing her cell phone number to a sales associate during an in-store purchase, it had obtained Plaintiff's prior express consent. *Id.* at 4:7-13; 7:23-7:26. Defendant now concedes that courts have held that a consumer providing a telephone number, without more, is not express consent; that the existence of an established business relationship with the consumer does not amount to prior express consent; and that express consent must be manifested by explicit and direct words. *Conf. Mem. Re: Def.'s Det. of the Merits* 4:4-6. Indeed, Plaintiff maintains that this argument will likely be overcome, asserting that there is no evidence suggesting that Defendant ever received Plaintiff's consent to contact her for any reason and pointing to case law that holds that merely providing a telephone number is insufficient to establish express consent. *Conf. Mem. Re: Pl.'s Det. of the Merits* 7:23-9:23. However, Plaintiff cites a case that supports the proposition that a plaintiff provides express consent by supplying a telephone number. *Id.* at 4:16-21 (*Green v. DirecTV, Inc.*, No. 10-c-117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 8769 (1992))). Moreover, Plaintiff was "mindful that this precise issue is untested in the Ninth Circuit." *Id.* at 9:22-23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

Ultimately, "while Class Counsel are confident that Plaintiff could have succeeded on her TCPA claims, they acknowledge the lack of direct authority in the Ninth Circuit on several critical issues, as well as the recent negative case law discussed above." *Id.* at 11:3-6. The Court agrees that although Plaintiff's case seems strong, there are potential legal uncertainties. Therefore, this factor weighs in favor of final settlement approval.

   ii. *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Because of the potential expense, lengthy duration, and possible risks of further litigation, this factor weighs in favor of settlement approval. Defendant has previously indicated that absent a settlement agreement, it would vigorously pursue its defenses to the above-mentioned claims. *Mot.* 15:14-15. Plaintiff contends that "considering the complexity of the case, the amount in controversy, and the stage of the proceedings, it is almost certain that the Parties would invest substantial labor and expenses on a motion for class certification, a motion for summary judgment, expert witness discovery, and the briefing and arguing of a number of discovery motions, pre-trial motions, and evidentiary motions." *Id.* 15:16-20. Further, Plaintiff argues that "a full trial would be expensive for both Parties, requiring months of preparation and the calling of witness and experts from across the country." *Id.* 15:20-22. Moreover, if the 203,254 person class were to succeed at trial, it would theoretically be entitled to over $100 million. *Conf. Mem. Re: Pl.'s Det. of the Merits* 12:23-25. Because of the potential for this high sum, the losing party will very likely appeal the decision, resulting in the expenditure of even more time and money. *Mot.* 15:22-25. Plaintiff further argues that should she prevail, given that such a massive verdict would be impossible to secure, the statutory damages award would likely be reduced to a more manageable, but unknown, number. *Conf. Mem. Re: Pl.'s Det. of the Merits* 13:4-14. Indeed, courts have reduced the statutory damage amount awarded in TCPA violation cases to the actual damages experienced. *See, e.g.*, *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 & 900 n.8 (W.D. Tex. 2001) (declining to award the full $500 for each violation because it would be "inequitable and unreasonable" to do so, given that it would amount to an award of $2.34 billion against two individuals and a 15-employee company). In this case, actual damages would be at most a nickel per text, depending on the individual's phone plan. *Conf. Mem. Re: Pl.'s Det. of the Merits* 13:9-14.

With these expenses still to come, and the inherent risk involved in continued litigation, this factor weighs in favor of settlement approval. *Mot.* 15:25-27.
   iii. *Risk of Maintaining Class Action Status Throughout Trial*

This factor does not weigh against settlement because although Plaintiff will likely maintain class action status throughout trial, there are potential risks. Plaintiff is confident that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

"given the uniform nature of Defendant's alleged conduct toward the Class, certification is proper" because the key issues are common between the Class and commonly focus on Defendant's conduct. *Conf. Mem. Re: Pl.'s Det. of the Merits* 11:8-22. Defendant does not appear to dispute that Plaintiff would be able to maintain class action status. *Conf. Mem. Re: Def.'s Det. of the Merits* 2:9-5:20.

Even still, Plaintiff contends that the Parties would face an opposed motion for class certification should litigation continue. *Mot.* 16:23-24. Plaintiff argues that while the weight of authority favors certification based on TCPA class actions with similar facts, a denial of class certification remains a possibility because at least one court has found that the issue of "prior express consent" is an individualized one that precludes class certification. *See Kenro, Inc. v. Fax Daily, Inc*., 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997).

Though Plaintiff would likely be able to maintain class action status through trial, there are some risks that Plaintiff would not be able to maintain class action status and this factor does not weigh against approval of the settlement.

### iv. Amount Offered in Settlement

This factor also weighs in favor of settlement approval. The TCPA authorizes consumers to recover statutory damages of $500. 47 U.S.C. § 227 (b)(3)(A)-(B). If the 203,254 person class were to succeed at trial, it would theoretically be entitled to over $100 million. *Conf. Mem. Re: Pl.'s Det. of the Merits* 12:23-25. This large of a verdict is wholly unattainable, as it would force Defendant into bankruptcy. *Conf. Mem. Re: Pl.'s Det. of the Merits* 13:4-9. Moreover, Plaintiff argues this large of a verdict is grossly disproportionate to the monetary harm caused by the Defendant's unsolicited text messages because the class suffered actual damages of at most a nickel per text received, depending on the class member's text messaging plan; therefore, the damages award amount would likely be reduced to a more manageable number. *Id.* at 13:9-14. Moreover, Plaintiff cites to courts that have observed that devastatingly large damage awards may raise due process issues, limiting these massive recoveries. *Mot.* 18:3-10 (citing *Parker v. Time Warner Entm't Co., L.P*., 331 F.3d 13, 22 (2d Cir. 2003) and *Blanco v. CEC Entm't Concepts L.P.,* No. 07-CV-0559 GPS, 2008 WL 239658 (C.D. Cal. Jan. 10, 2008)).

Plaintiff argues that under the Settlement Agreement terms, 23 percent of Class Members would have to file a claim to lower the payments from the $150 maximum; based on Class Counsel's experience with similar TCPA text message settlements, it is likely that only 2-10 percent of Class Members will file a claim. *Conf. Mem. Re: Pl.'s Det. of the Merit* 14:4-15. However, Plaintiff does concede that similarly structured claims-made settlements had participation rates of over 30 percent, and given the recent nature of these text messages in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

addition to the Defendant's brand recognition, there is an increased likelihood that a higher percentage of claims will be filed. *Id.* at 14:6-12.

Finally, Plaintiff contends the Settlement Agreement is reasonable and consistent with the maximum claim amount in similar TCPA text messaging settlements. *Id.* at 15:6-15 (citing *Kramer v. Autobytel, Inc.*, No. 10-CV-2722 (N.D. Cal. Jan. 27, 2012) (approving a text message settlement creating a $12.2 million settlement fund entitling each class member to a $100 settlement payment); *Satterfield v. Simon & Schuster, Inc.,* No. 06-CV-02893 (N.D. Cal. Aug. 6, 2010) (approving a text message settlement creating a $10 million settlement fund entitling each class member to a $175 settlement payment); and *Weinstein v. The Timberland Co.,* No. 06-CV-00484 (N.D. Ill. Dec. 18, 2008) (approving text message settlement creating $7 million settlement fund entitling each class member to a $150 settlement payment)).

In sum, taking into consideration the amount that will likely be awarded to each participating Class Member, along with the unknown verdict amount should Plaintiff succeed at trial, the amount offered in settlement supports approval of this class settlement.

        *v.*     *Extent of Discovery Completed and Stage of Proceedings*

Because extensive discovery has been conducted, this factor weighs in favor of settlement approval. The Parties contend that they have had the opportunity to fully explore the strengths and weaknesses of their respective positions. Plaintiff submitted a declaration by Class Counsel attorney Jay Edelson. He explained that the Parties conducted a Rule 26(f) conference, and that his law firm conducted extensive discovery. *Edelson. Decl.* ¶¶ 9-11; *Mot.* 19:18-25. This discovery included several rounds of interrogatories and document requests, third-party subpoenas, and analysis of the results, which included review of 300 gigabytes of electronically stored information. *Edelson. Decl.* ¶ 11.

The Parties then participated in a day-long mediation session during which they engaged in several rounds of arms-length negotiations, but were unable to reach an agreement. *Id.* ¶ 13. At that time, the mediator made a proposal as to the principal terms of the agreement, which Plaintiff and Defendant accepted. *Id.* The Parties then spent months negotiating the remaining terms of the Settlement Agreement, participating in telephone calls, sending emails, and the exchange of numerous edits. *Id.* ¶ 14.

Based on the foregoing, now is an appropriate time to settle the action. Therefore, this factor weighs in favor of settlement approval.

        *vi.*    *Experience and Views of Counsel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

This factor weighs in favor of settlement approval. Class Counsel specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue. *Mot.* 20:23-21:2. Further, Plaintiff characterizes defense counsel as "highly experienced . . . from a top-tier national defense firm who promised to continue to mount a formidable defense." *Mot.* 21:8-13. The Court finds no reason to question the opinions of those involved in litigating and settling this case. Thus, this factor also weighs in favor of settlement approval.

   *vii.* *Presence of a Governmental Participant*

No government agency has participated in this lawsuit in any way. Therefore, this factor does not apply to the Court's analysis. *Mot.* 21:19-22.

   *viii.* *Reaction of Class Members to the Proposed Settlement*

This factor weighs in favor of settlement approval as Class Members have had a generally favorable reaction to the settlement. Notice for this Class Action Settlement has been provided, as discussed above. *See Azari Decl.* ¶¶ 12-18. Thus far, reaction to the Settlement has been favorable, as Class Counsel represented at the hearing that nearly 19,000 Class Members haved filed a claim. This number will likely rise between now and the June 11, 2013 deadline, with Class Counsel estimating that the total number by the June 11, 2013 deadline will be slightly below 20,000. Seven individuals have requested exclusion, and one objection was filed on behalf of two objectors. *Mot.* 21:24-27. This objection has since been withdrawn, and the objectors now agree that the settlement in fair, reasonable, and adequate. *Jt. Stip. to Provide Notice to Class & Withdrawal of Obj.* 3:4-10. Because there was only one objection, which was subsequently withdrawn, and so few exclusion requests in such a large class, the final factor also suggests settlement approval is appropriate. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

   *ix.* *Collusion Amongst the Negotiating Factors*

The Court also finds that the Settlement Agreement is free from collusion, which weighs in favor of settlement approval. The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiate resolution . . ." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Factors indicative of collusion include "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds; . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

. and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947.

Counsel is requesting 25 percent of the Settlement Fund, which falls in the Ninth Circuit's 25 percent "benchmark" in common fund cases. *See In re Bluetooth, 654 F.3d* at 942. Further, this is not a situation in which the class received no monetary distribution but Class Counsel are amply rewarded.

A clear sailing agreement exists where the party paying the fee agrees not to contest the amount to be awarded as long as it falls beneath a negotiated ceiling. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077, 1077 n.29 (C.D. Cal. 2010). The presence of a clear sailing provision heightens the district court's duty to closely scrutinize the relationship between attorneys' fees and benefit to the class, being careful to not award unreasonably high fees. *See In re Bluetooth,* 654 F.3d at 948 (citation omitted). Clear sailing provisions are disfavored, but not prohibited, and are routinely accepted by both federal and California courts. *See id.* at 949; *Hartless v. Clorox Corp.*, 273 F.R.D. 630, 645 n.6 (S.D. Cal. 2011). Here, there is a clear sailing arrangement within the Settlement. *Settlement Agreement* ¶ 8.1. The Court will scrutinize the relationship between the attorneys' fees and the benefit to the class in Part IV.B. Moreover, the payment of attorneys' fees here is not separate and apart from the class funds, but rather a percentage of the total value of the Settlement. *Settlement Agreement* § 1.35.

This Settlement Agreement also contains a reversion to Defendant of any unclaimed funding within the Settlement Fund. *Settlement Agreement* ¶ 2.1(a). However, there is no reversion to Defendant of attorneys' fees, which is what *In re Bluetooth* specifically warns against; rather, it is a reversion of any Settlement Fund amount not claimed by Class Members. 654 F.3d at 947. The inclusion of a reversionary clause does not necessarily render a settlement agreement unfair; a court is generally looking for whether it signals that there was collusion between the parties. *See Williams v. MGM-Pathe Comm'n*, 129 F.3d 1026, 1027 (9th Cir. 1997).

Here, the assurances of counsel and the presence of Judge Infante as a neutral mediator presiding over the Parties' negotiation are two factors weighing in favor of finding non-collusiveness. *See In re Bluetooth*, 654 F.3d at 948. Judge Infante played an active role in assisting the Parties with their arms-length negotiations. *Mot.* 24:12-14. Further, the Parties engaged in multiple rounds of arms-length negotiation throughout the day of settlement and still failed to reach an agreement. *Edelson Decl.* ¶ 13. Judge Infante then made a mediators proposal, which formed the principal terms of the Settlement Agreement. *Id.* Moreover, as discussed above, the Parties conducted extensive discovery and did not agree to settle the case until all of the pertinent facts had been gathered and analyzed. *Mot.* 24:18-20. The Court finds that this evidence demonstrates that this Settlement is free of collusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

B. <u>Attorneys' Fees</u>

Trial courts have the discretion to award attorneys' fees based on a percentage of the common fund or based on the "lodestar" method. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994). Although there is discretion, use of the percentage method is the dominant approach in common fund cases. *E.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). "Under the percentage method, the court simply awards attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable fee." *See Wash. Pub. Power,* 19 F.3d at 1295 n.2. The Ninth Circuit has noted that an award of 25 percent of the fund is the "benchmark," with actual awards ordinarily ranging from 20 to 30 percent. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989).

Under the lodestar method, the court multiplies the reasonable hours expended by a reasonable hourly rate. *See Wash. Pub. Power,* 19 F.3d at 1295 n.2. "The court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *Id.* Considerations that may favor a multiplier in common fund cases include the complexity of the case, the risks involved, and whether payment is on a contingency basis. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002). Finally, "[w]hether a court applies the lodestar or the percentage method, [the Ninth Circuit] require[s] only that fee awards in common fund cases be reasonable under the circumstances." *Wash. Pub. Power,* 19 F.3d at 1295 n.2. (internal citations omitted).

Though Class Counsel initially sought an award of $2.5 million, which would have been 25 percent of the Settlement Fund, Class Counsel represented at the hearing that it is now seeking only $2.4 million, slightly less than 25 percent of the Settlement Fund. Class Counsel contend that this amount is reasonable under both the percentage method and the lodestar method because it meets the Ninth Circuit's "benchmark" percentage of attorneys' fees from a common fund and is reasonable when cross-checked under the lodestar analysis. *Att. Fees Mot.* 7:6-13.

Class Counsel maintain that the percentage is reasonable in light of (1) the fact that the percentage fees awarded is based on the full amount of the Common Fund; (2) the exceptional results achieved in this case; (3) the significant risks involved in the litigation, as summarized above; (4) the skill required and quality of work; (5) the contingent nature of the fee; and (6) the agreed-upon fee's consistency with awards in similar cases. *Vizcaino,* 290 F.3d at 1048-50 (applying similar factors in considering whether the "benchmark" percentage was warranted based on the specific circumstances of the case).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#52;#56/ JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

First, both the Supreme Court and the Ninth Circuit have found that the award of attorneys' fees under the common fund doctrine should be based on a percentage of the total fund size, and not the amount claimed by Class Members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Williams*, 129 F.3d at 1027. Thus, the award of attorneys' fees in this case based on a percentage of the total fund is consistent with case law.

Second, Class Counsel argue that the $150 (or a lesser pro rata share) of the $10 million fund is an exceptional result for the Class. *Att. Fees Mot.* 12:26-13:4. Although the TCPA warrants an individual recovery of $500 in these circumstances, the actual damages to the class were at most a nickel per text. Class Members can easily recover the $150 by submitting a valid claim form via U.S. Mail or on the settlement website. *Att. Fees Mot.* 5:18-25. Moreover, the Settlement requires Defendant to implement significant changes designed to change Defendant's marketing practices nationwide and stop future transmission of unsolicited text messages to consumers. *Id.* at 13:4-18. It also provides an easy way for Class Members to stop Defendant from sending them future text messages. *Id.* at 13:4-18. These changes not only help achieve the injunctive goals of the Plaintiff's class action, but also "promote important public policy concerns related to privacy and nuisance stemming from the same type of cost-shifting advertisements that prompted Congress to enact TCPA in the first place." *Id*. at 13:12-18. Though the amount of money to be recovered by Class Members is substantial in comparison to the damages actually suffered and the prospective relief correlates to important policy principles underlying this action, the Court is not persuaded that the results were "exceptional." Rather, the settlement amount of $150 per Class Members is in line with the recovery in other cases cited by Plaintiffs, in which recovery has ranged from $100 to $175. *See Conf. Mem. Re: Pl.'s Det. of the Merits* 13:4-9 (citing cases). The settlement amount in this case is thus neither on the high nor low end of the range of recovery in similar cases, but roughly in the middle. However, though the result does not appear to be "exceptional" compared to recovery in similar cases, it is a good result for class members.

Third, Class Counsel argue that the eleven asserted affirmative defenses by the Defendant could have effectively ended the litigation, thus rendering prosecution of this case in the face of these settlement terms risky and arguably irresponsible considering the substantial future steps that would still need to be taken to achieve a positive verdict. *Id.* at 14:4-13. Class Counsel further argues that this case involved complicated legal and factual issues, including potential complications surrounding class determination because of the collection of consumer's telephone numbers from several different sources. *Id.* at 13:23-14:4.

Fourth, Class Counsel argue that they skillfully prosecuted this action. Although faced with formidable opposition by defense counsel, Class Counsel contend that they were nevertheless able to reach a valuable settlement to the benefit of the Class Members after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

engaging in extensive discovery. *Id.* at 14:22-15:4. Class Counsel maintain that their ability to expeditiously achieve such a positive result for Class Members, including substantial compensation and the halting of Defendant's illegal conduct, should be a credit to their work. *Id.* at 15:6-15.

Fifth, Class Counsel argue the contingent nature of the fee award justifies the requested fee, particularly given they have already spent over 1,100 hours representing Plaintiff and the Class without compensation and have advanced over $50,000 in litigation expense with risk of non-return. *Id.* at 15:26-16:8.

Sixth, Class Counsel maintain that the agreed upon fee of approximately 25 percent of the common fund is consistent with awards in nearly identical cases. *See, e.g.*, *Satterfield*, No. 06-CV-02893 (awarding class counsel 25 percent of the settlement fund). A court may refer to awards made in other settlements of comparable size when determining whether an award is reasonable. *See Vizcaino*, 290 F.3d at 1049-50, 1050 n.4 (discussing that a reasonable fee should not be determined by replicating the market rate, but that reasonableness could be based in part on the range of fee awards out of common funds of comparable size). Moreover, Class Counsel asserts that awards higher than 25 percent are regularly approved by courts in this District. *Att. Fees Mot.* 16:10-24; *see, e.g.*, *In Re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming a 33.33 percent fee); *Vizcaino*, 290 F.3d at 1048-50 (affirming a 28 percent fee); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-CV-4056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. 2011) (noting that the typical fee in this Circuit is 30-33 percent of the fund).

Moreover, Class Counsel argue that applying the lodestar method as a cross-check supports the reasonableness of the agreed upon attorneys' fee, which the Ninth Circuit encourages district courts to do. *See In re Bluetooth* 654 F.3d at 944 (encouraging courts to cross check their fee calculation against a second method). When Class Counsel submitted the motion for attorneys' fees on January 2, 2013, they had spent approximately 1,400 hours on the action. *Att. Fees Mot.* 17:18-18:19. Between January 3, 2013 and May 1, 2013, Class Counsel expended an additional 451.2 hours of attorney time. *Edelson Supp. Decl.* ¶ 9. Class Counsel billed at rates ranging from $675 for Jay Edelson, the managing partner, to $250 for David Dale, a first-year associate. *Id.* ¶ 8. Class Counsel also billed at a rate of $425 for Ari J. Scharg, a fifth-year associate, and $550 for Ryan D. Andrews, the partner who expended the most hours on the matter. *Id.* Though Class Counsel originally included the time law clerks and staff expended on the case, Class Counsel ultimately chose not to include those hours in their lodestar calculation. *Id.* ¶ 8, n.2. The billing rates are reasonable in the California and Chicago legal markets, where Class Counsel's firm is located, and have been have been approved by state and federal courts in similar settlements. *Edelson Decl.* ¶ 18. Further, the number of hours appears reasonable in relation to the work required by the case. Based on these numbers, Class Counsel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

calculated a lodestar figure of $739,402.50, in addition to $140,119.90 in unreimbursable costs and expenses. *Edelson Supp. Decl.* ¶ 11. This work includes extensive discovery, participation in mediation, and further negotiation of Settlement terms. *Edelson Decl*. ¶¶ 9-14.

      The resulting figure may be adjusted upward or downward to account for several factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon, 1*50 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)). The most important consideration is the benefit to the Class Members. *In re Bluetooth*, 654 F. 3d at 942.

      In this case, Class Counsel is requesting a total amount of $2.4 million, based on a lodestar figure of $739,402.50. Thus, the total fee is based on a multiplier of approximately 3.2, which is slightly lower than the original multiplier of 3.8 used in the motion for attorneys' fees. A multiplier of 3.2 falls within the normal range applied in similar cases. *See Vizcaino,* 290 F.3d at 1051, 1051 n.6, Appendix (finding a range of multipliers applied in common fund cases of 0.6-19.6, with most (20 of 24, or 83 percent) from 1.0-4.0 and a bare majority (13 of 24, or 54 percent) in the 1.5-3.0 range); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multiplier in this range or higher"). However, the Court is not persuaded that a multiplier of 3.2, for a total award of attorneys' fees of $2.4 million, is appropriate in this case. Class Counsel specialize in litigating consumer class actions of similar size and complexity, have served as counsel on numerous similar actions, and have been appointed lead counsel by courts throughout the country, and therefore provide superior representation quality. *See Firm Resume of Edelson McGuire*, Dkt. # 52-1. Furthermore, Class Counsel were precluded from accepting other billable matters and engagements because of this action. *Edelson Decl*. ¶ 7. However, in light of other circumstances of the case, the Court finds an award of $2.4 million to be too high. First, the Court is not persuaded that the case presented a particularly great risk to Class Counsel: Though Class counsel litigated against a highly-skilled Defendant and worked on a contingent basis, risking non-payment, Plaintiff's case was strong and there was ample precedent suggesting that Plaintiff would succeed on the merits, reducing the risk to Class Counsel. Further, this action reached a settlement without significant motion practice. Although the reaching of an early settlement is "simply not relevant to determining the risks involved" and so is not a basis for denying the multiplier, *see Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 257-58 (7th Cir. 1988), the Court considers the amount of time Class Counsel actually spent on the case and the difficulty of the litigation in considering whether the multiplier is appropriate. Finally, as noted above, Class Counsel achieved a good, though not exceptional, result for Class Members, as the award to Class Members was roughly the average amount awarded in similar cases. Accordingly, the Court finds a multiplier of approximately 3.2 for a total award of $2.4 to be excessive under the circumstances of this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

Pursuant to the Settlement Agreement, the Court may, in its discretion, reduce the amount of attorneys' fees to be awarded to Class Counsel while preserving the other terms of the Settlement Agreement. *See Settlement Agreement* ¶ 8.2. Class Counsel confirmed at the Fairness Hearing that the Court may reduce the attorneys' fees award without disturbing the other terms of the Settlement Agreement. Based on the considerations discussed above, the Court concludes that an appropriate award of attorneys' fees in this case is $1.25 million, which amounts of a multiplier of approximately 1.7. Additionally, Class Counsel is entitled to costs in the amount of $140,119.90. Accordingly, the Court awards Class Counsel $1.25 million in attorneys' fees and $140,119.90 in costs, to be paid from the Settlement Fund.

    C.    <u>Enhancement Award to Representative Plaintiff</u>

Finally, Plaintiff requests $10,000 for Ellison as a class representative service payment for her efforts on behalf of the Settlement class. *Att. Fees Mot.* 21:19-21. The Court must evaluate the payment to ensure that it is reasonable by considering relevant factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Clark v. Amer. Residential Servs. LLC*, 175 Cal. App. 4th 785, 804, 96 Cal. Rptr. 3d 441 (2009) (internal quotation marks omitted).

Class Counsel contend that Ellison's involvement in this litigation was critical to the ultimate success of this case. *See Edelson Decl.* ¶ 26. First, Ellison conducted a personal investigation into the circumstances bringing about this action and sought out Class Counsel in order to discuss her rights. *Ellison Decl.* ¶¶ 4-8. In addition, Ellison relinquished control of her cell phone to preserve relevant evidence, requiring her to absorb the cost of purchasing a new phone. *Id.* ¶ 9. Further, Ellison consulted with Class Counsel on several occasions in person and over the phone; reviewed discovery documents and assisted with formulating written discovery requests; provided Class Counsel with insight on her understanding of Defendant's business; made herself telephonically available during the day of the mediation and consulted with Class Counsel that day; and reviewed the pleadings, court filings, and the Settlement Agreement. *Id.* ¶¶ 8-15. Additionally, there was no pre-agreement or discussion concerning an award or the potential for an award between Class Counsel and Ellison in exchange for her involvement. *Edelson Decl.* ¶ 25.

Further, Plaintiff argues that the proposed incentive award is at or below awards approved in similar class action settlements. *Att. Fees Mot.* 22:8-10; *see Satterfield*, No. 06-CV-02893 (approving incentive awards of $20,000, $5,000, and $5,000 to three plaintiffs); *Lozano v. Twentieth Century Fox*, No. 09-CV-6344 (N.D. Ill. April 15, 2011) (approving incentive award of $15,000); *Kramer*, No. 10-CV-2722 (approving incentive award of $10,000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#52;#56/ JS-6**

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

Considering Ellison's contributions as class representative, the Court finds that the $10,000 enhancement award is justified.

V.      Pleadings Submitted Pursuant to the Court's September 25, 2012 Order

The following subsections detail the documents submitted by the Parties in response to the Court's September 25, 2012 Order.

   A.      Confidential Memoranda

Both Parties submitted confidential memoranda detailing their assessments of the case and its value. These memoranda satisfy the instructions set forth in the Court's Order.

   B.      Memorandum Justifying Award of Attorneys' Fees and Costs

Per the Court's Order, Plaintiff filed a Motion for Order for Attorneys' Fees, Expenses, and Incentive Award. Dkt. # 52; *see also infra* Part IV.B. Thus, the Court's second instruction is satisfied.

   C.      Memorandum Justifying Plaintiff's Incentive Award

Per the Court's Order, Plaintiff filed a Motion for Order for Attorneys' Fees, Expenses, and Incentive Award. Dkt. # 52; *see also infra* Part IV.C. Thus, the Court's third instruction is satisfied.

VI.     Conclusion

On balance, the settlement appears to be fair to the Class. Moreover, the Court finds that a class representative enhancement award is reasonable. Further, though the Court concludes that the amount requested by Class Counsel in attorneys' fees is too high, the Court finds that an award of $1.25 million in attorneys' fees is appropriate, in addition to an award of costs in the amount of $140,119.90. Thus, the settlement appears to be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). For the foregoing reasons, Plaintiffs' Motion for Final Approval of Settlement is **GRANTED**. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

   1.      The Court approves settlement of the action, as set forth in the Settlement Agreement as fair, just, reasonable and adequate. The Parties are directed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#52;#56/ JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 11 - 5935 PSG ( AGRx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Samantha Ellison v. Steven Madden, Ltd.* | | |

      perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Consistent with the Settlement Agreement, this action is dismissed on the merits and with prejudice. All Class Members who did not opt out shall be bound by the release contained in the Settlement Agreement and the judgment in this action;

3. Class Counsel are awarded $1,250,000 in attorneys' fees and $140,119.90 in costs. The Claims Administrator shall also be paid $459,449.83 from the Settlement Fund. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court;

4. Plaintiff Samantha Ellison is awarded $10,000 as a class representative enhancement award for her services in bringing and prosecuting this matter. The Court finds that this amount is warranted and reasonable for the reasons set forth in the moving papers before the Court;

5. The Claims Administrator is authorized to disburse funds from the Settlement Account pursuant to the terms of the Settlement Agreement and this Order.

**IT IS SO ORDERED.**